# William and Thomas Denniston *v.* The Philadelphia Company, Appellant.

*Eminent domain—Pipe line for gas.*

The inconvenience and injury caused by the location of a properly constructed and carefully operated pipe line may be considered in a proceeding for the assessment of damages to the land through which it passes, but such as are produced by the negligent construction and operation of the pipe line cannot be considered in such a proceeding.

*Pipe line—Negligence—Leakage—Evidence.*

In a proceeding to assess damages for injuries resulting from the construction of a pipe line for gas, evidence that leakage of gas from the pipe line had destroyed a spring, and injured vegetation, is not proper for the consideration of the jury, where there is nothing to show whether the leakage was the natural and ordinary consequence of the location and construction of the line, or was the result of the company's negligence in constructing and operating the line.

*Gas Companies—Negligence—Operation of pipe lines.*   ·

Gas companies are expressly made liable by the act of May 29, 1885, P. L. 29, for negligence in operation of their lines, but it would be both illegal and unjust to permit a recovery of damages due to such negligence to be had in a suit to recover for assessment of damages for the taking of the land.

*Practice—Request of view by jury—Laches.*

·   Where the right exists to demand a view of the premises by the jury, ·the request therefor ordinarily comes too late when not made until after the evidence was closed on both sides.

*Practice, Super. Ct.—Defective assignments.*

An assignment is defective and will not be considered where the evidence objected to is not set forth.

·   *Evidence—Alleged experts.*

·   The testimony of alleged experts is properly rejected when offered as such in a matter which the witness has not followed and cannot follow as a business or in that which must necessarily result from observation ·of a character so general that it must be common to every person.

Argued April 20, 1896.   Appeal, No. 2, April T., 1896, by defendant, from judgment of C. P. Washington Co., Nov. T., 1892, No. 476, on verdict for plaintiff.   Before RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER and ORLADY, JJ. Reversed.

Appeal from report of viewers awarding damages for construction of pipe line for gas.   Before GREER, P. J., specially presiding.

Verdict for plaintiff for $675.

The facts sufficiently appear from the opinion of the Superior Court and opinion of the Supreme Court in the report of the same case in 161 Pa. 41.

*Errors assigned* were, (1) admitting testimony as to whether leaks developed subsequently to laying the pipe; (2) permit-⁀ting Joseph Estep to testify as to amount of depreciation of ⁀the farm; (3) in permitting W. E. Morrison to testify as to whether there is danger to the farm buildings and straw stacks, ·etc., in case gas should escape; (4) in answer to the third ·point of the defendant, which point and answer are as follows:

3. That the testimony of witnesses as to depreciation in market value of plaintiffs' property in November, 1891, in consequence of the construction and use of the defendant's pipe-

line through it, based upon a personal inspection of said property and lines made by them more than a year after the completion and use of said line, and founded upon any alleged injurious effects of leakage of gas from said lines then apparent, must be disregarded by the jury. *Answer*: The jury will not regard this testimony for any purpose other than so far as it goes to throw light upon the nature and character of such a pipe-line properly constructed and maintained; with this qualification, affirmed.

(5) In answer to fourth point of defendant, which point and answer are as follows:

4. That the right of the plaintiffs to recover any damages in this case accrued on the location and construction of the defendant's line through their property, and was neither enlarged nor abridged by subsequent occurrences; and that in the consideration of the question of damages the jury must disregard all testimony as to any leaking of gas along the defendant's line through said property based upon a personal inspection of said line by the witness more than a year after its completion and use by the defendant company. *Answer*: Except so far as it will enlighten the jury as to the nature and character of the pipe line such as this conveying gas, and affect the market value of the farm,—affirmed.

(6) In refusing to permit the jury at the request of the defendant to go upon plaintiff's property to visit and view the premises through which the right of way of defendant's pipe line extends before rendering verdict.

*A. M. Todd, J. A. Wiley* with him, for appellant.—This case as tried is practically ruled by Denniston v. Philadelphia Co., 161 Pa. 41. As to the third exception cited: R. R. Co. v. Hummell, 27 Pa. 99; Boyd v. Negley, 40 Pa. 377; R. R. Co. v. Lazarus, 28 Pa. 203; Patten v. R. R. Co., 33 Pa. 426.

*Boyd Crumrine, E. E. Crumrine* with him, for appellee, as to the third assignment of error cited: Sunbury R. Co. v. Hummell, 27 Pa. 99; Railroad Co. v. Lazarus, 28 Pa. 203; Patton v. R. Co., 33 Pa. 426; Gilmore v. Railroad, 104 Pa. 275; Chambers v. South Chester Boro., 140 Pa. 510; Wallace v. Gas Co., 147 Pa. 205; Davis v. Gas Co., 147 Pa. 130.

OPINION BY WICKHAM, J., May 11, 1896:

On or about October 19, 1891, the appellant company, acting under its conceded right of eminent domain, entered on the farm of the appellees, containing two hundred and twenty-five acres, for the purpose of laying, across the same, a pipe line for the transportation of natural gas. The line which is twenty inches in diameter and about one hundred and twenty-four rods in length on the appellees' land, was completed in November, 1891. More than a year thereafter, the damages caused to the property were assessed by viewers appointed by the court of common pleas. From their report, the appellees took an appeal. The case was tried before a jury, and on an appeal taken to the Supreme Court by the appellant here, the judgment of the court below was reversed. See report in 161 Pa. page 41.

The reasons for the reversal are so necessary to be considered here, that we quote freely from the opinion. Says the court, " The principal inquiry on the trial of the case in the court below was how much if any was the market value of their farm reduced by such appropriation. To enable the jury to answer this question intelligently, it was proper to introduce evidence showing how the farm was affected by the location and construction of the pipe line upon it. It appeared from the evidence submitted for this purpose that the most serious injuries complained of, such as the destruction of the grass and other crops along and on both sides of the line, and of a valuable spring in the vicinity of it, were traceable to leaks in the main. The evidence, however, did not furnish any basis for determining whether the leakage was attributable to the negligence of the company in the construction and care of its line, or came in spite of the employment of the best known skill and appliances to prevent it; but it is clear that the leakage and its consequences were taken into consideration by the jury in forming an opinion in respect to the depreciation of the market value of the farm, by reason of the location of the pipe line upon it. One half of Joseph Estep's estimate of the depreciation was based on the leakage and two thirds of the estimates of the same by Joseph Pierce and W. F. Morrison rested upon it. Indeed, it is apparent that the estimates made by most of the plaintiffs' witnesses were materially af-

fected by the leakage which they discovered on their examination of the line, a year or more after its completion. As these estimates and the evidence upon which they were formed were for the consideration and assistance of the jury in ascertaining the depreciation in the market value of the farm, it is probable that the verdict was affected quite as much by the leakage and its consequences as the opinions of the witnesses were. It could not well be otherwise, because although the learned court instructed the jury, that injuries to the property resulting from a negligent operation of the line could not be considered in a proceeding for the assessment of damages occasioned by the location and construction of it, the evidence descriptive of the leakage failed to assign the cause of it. Was the leakage shown by the evidence consistent with skill in the construction and care in the operation of the line, or was it due to the negligence of the company in both, or either? A satisfactory answer to this question must have something more substantial to support it than conjecture, it must be founded upon evidence. If the leakage was the result of negligence, it was not an element to be considered in this issue. Hence there should have been evidence in the case which would have enabled the jury to find the cause of it; but there was none. To the extent therefore that the verdict was founded upon the evidence of the leakage and its effects, it was a mere guess.

" In obtaining, transporting and distributing the product of the gas fields, skill and care are required, in order to minimize the risks to persons and property incident to the business. The inconveniences and injuries caused by the location of a skillfully constructed and carefully operated pipe line may be considered in a proceeding for the assessment of damages to the land, through which it passes, but such as are produced by the careless construction of it cannot be. The former are the natural and ordinary consequences of the location, construction and use of the line, and terminate only with the abandonment of it, while the latter are exceptional and may be prevented by the use of the best known appliances and skill, and the observance of due care, in the prosecution of the business, and they constitute an independent cause of action.

" In this case the plaintiffs were entitled to be compensated for the depreciation in the market value of their farm due to

the location and construction of the pipe line, but not for injuries caused by the negligent operation of it. In considering their claim we must not lose sight of the fact that their right to damages accrued on the location and construction of the line, and that it was in no sense enlarged or abridged by subsequent occurrences. Nor did their delay in the enforcement of their right affect in any degree the amount of the damages recoverable on account of the appropriation of the land. We must therefore regard the case as if they had brought and tried it before there was any leakage of gas along the line. If they had done so, would they have been permitted to show that there might be a leakage which would render useless a strip of land, from thirty to fifty feet in width, along the entire line, and destroy a valuable spring in the neighborhood of it? We think not, unless it appeared that such would be the natural and ordinary result of the appropriation.

"It is of the first importance to the parties that the evidence in cases of this nature should be restricted to matters proper for consideration in ascertaining the depreciation in the market value of the land. Matters which may be so considered must be introduced, if at all, on the trial of the action for damages caused by the location and construction of the line, because the landowner cannot be compensated for them in a subsequent suit. An injury which is or may be produced by negligence in the operation or care of the line is not such a matter. It may be that the leakage complained of in the case before us was due to the company's negligence and that a continuance of it may be prevented by proper repair and careful operation of the line. If so, the learned court below erred in admitting and allowing the jury to consider the evidence of it. There was no attempt to show that it was inseparable from, or a natural and ordinary consequence of the location and construction of the line, and yet it may have affected the verdict, as it did the estimates of the witnesses. In the absence of affirmative evidence that it was at least consistent with a proper location, construction and operation of the pipe line, it was not an element to be considered in this case."

At the second trial the court below unfortunately again admitted much of the same testimony which was condemned in the above opinion. Joseph Estep, who seems to have visited

the locus in quo three times, once before the view and twice thereafter, was permitted to testify, in the face of objections, that the damage to the farm, which he said largely resulted from leakage, was $8.00 to $10.00 an acre. This witness freely admitted that he knew practically nothing as to the cause of the leakage, to what extent it had prevailed, or how long it had continued. His estimate of the injury caused to the farm when he testified before the viewers, was from $4.00 to $5.00 per acre. He was so impressed by the leaks he saw on his second visit, that he doubled this estimate. It is plain from his testimony that, as at the first trial, at least one half of his estimate of the damage done was based on the leaks which he observed during his second visit to the farm. His estimate was entirely incompetent. It is easy to see that if, through some accident or negligence, the pipe had burst just before the last trial and temporarily filled the earth and air with gas, the plaintiff might easily have rallied a host of witnesses like the one just mentioned, who could, perhaps, without stretch of conscience, testify that a large part of the farm was, when they were taken to see it, rendered practically useless and valueless; and yet the break might be repaired a few hours later. This illustration, while perhaps suggesting an extreme case, shows the danger attending the admission of testimony like that given by Estep.

The testimony of Thomas Cushing, who was called by the appellees as an expert, does not make Estep's testimony competent. Cushing was properly allowed to state that there would be necessarily, by reason of expansion and contraction, some leaks, from time to time, in a line like that laid by the appellant. He added that they could and should be promptly stopped, and that to permit them to continue would be negligence. Nowhere, however, is there any evidence tending to show that the leak and the effects thereof spoken of by Estep and other witnesses for the appellees were natural and ordinary results of the presence of the pipe line, assuming that it was constructed properly and operated without negligence.

For negligence, the gas companies are expressly made liable by section 10 of the act of May 29, 1885 (P. L. 29), and to permit a recovery in this proceeding for things which may be made the grounds for another action, or perhaps many actions, would be illegal and unjust.

The second assignment of error is sustained. The first assignment relates to a kindred matter, but, as the evidence objected to is not set forth, we cannot consider it.

The third assignment complains that W. E. Morrison was permitted to testify that there is danger, in case gas would escape, of the farm buildings being burned. This testimony should have been rejected for two reasons; first, because the witness was allowed to base his opinion on any escape of gas, however negligent the same might be; and second, because the opinions of experts or nonexperts are not admissible on the subject-matter of the inquiry. In Franklin Fire Ins. Co. v. Gruver, 100 Pa. 266, GORDON, J., well says, "How any person can be said to be an expert in that which is not and cannot be followed as a business, or in that which must necessarily result from observation of a character so general that it must be common to every person, we cannot understand. The opinion of a witness who neither knows, nor can know, more about the subject-matter than the jury, and who must draw his deductions from facts already in the possession of the jury, is not admissible . . . . were it otherwise the opinions of jurors upon the most obvious facts might be always shaped for them by the testimony of so-called experts, and thus would a case be constantly liable to be determined, not by the opinions and judgment of the jury but by the opinions and judgment of the witnesses."

In that case the attempt was made to introduce in evidence the opinions of alleged experts that the erection of certain new buildings, near the one insured by the appellant company increased the risk, by adding to the danger of fire. The case is cited approvingly in Lineoski v. Susquehanna Coal Co., 157 Pa. 153, and the rule therein laid down again applied. In the present case it is proper to show the proximity of the buildings to the pipe line, their character and like matters, but the opinions of witnesses that buildings are in danger of being burned by reason of escaping gas are entirely inadmissible. The jurors, under proper instructions from the court, must be let draw their own inferences from the facts. The third assignment of error is sustained.

It is proper to say here that the learned trial judge, some time after the testimony complained of in the third assignment was

received, intimated (but whether or not in the hearing of the jury we cannot say) that he would strike out this evidence. It was probably through inadvertence he failed to do so, or to instruct the jury to disregard it. The learned counsel for the appellees, in his paper-book, deals with Morrison's opinion as having remained before the jury and argues in favor of its admissibility, and we, therefore, cannot assume that it was not left in the case.

The fourth and fifth assignments must also be sustained. The defendant's third and fourth points therein referred to should have been unqualifiedly affirmed. The appellees' witnesses were permitted, under exception, to give estimates as to the depreciation in the value of the land, admittedly based in part upon all the leaks and their results. No effort was made to distinguish between the true and false elements of damage ; indeed, the appellees' counsel informed the court that it was impossible to do so. It is only necessary to say that a witness who could not do this should not have been allowed to give any estimate whatever which rested in any degree on the fact of the leakage. As it was, witnesses who were clearly incompetent on their own showing were heard on this branch of the case, and practically nearly everything that the Supreme Court held should have been excluded was worked in, ostensibly " to give the jury light," the almost necessary consequence being to enhance the verdict. The affirmance of the points in question would hardly have undone the harm caused by admitting the testimony, but whatever protection it might have afforded the appellant was entitled to. It was all in vain to caution the jurors not to allow their verdict to be influenced by injuries caused by negligence. How could they know from such evidence what injuries belonged to the class they might consider as proper elements of damage, or to the other class which they were to disregard. The appellees' counsel said he could not do this, when he was offering evidence of the injuries and their causes, and it would therefore be too much to expect the jury to intelligently draw the dividing line.

The appellees had the right to prove, as was done by the expert witness, Cushing, that some leaks would unavoidably occur, and they might corroborate this theory by showing that they did occur, but they should have shown affirmatively that

such leaks were not avoidable by due care. Evidence of leaks merely and their consequences, without more, should not have been admitted for any purpose. As said before, to permit this might lead to a double recovery against the appellant.

The sixth and last assignment of error complains of the refusal of the court to send the jury to view the premises over which the pipe line extended, as required by the act of May 21, 1895 (P. L. 90). This assignment cannot be sustained. The request for the view came too late. The record shows that it was not made until after the evidence was closed on both sides. The view pertains to the evidence, and properly the motion therefor should be made by the party desiring it, before he closes his case in chief. If made after all the evidence is in, it is discretionary with the court to allow or refuse it. The better practice is to make the motion, or at least to give notice thereof, as soon as the jury is sworn, so that proper and timely arrangements can be made for taking them to the premises. To grant the motion after the evidence is closed on both sides, and the witnesses perhaps dismissed, might lead to unfair practices and results. Things appearing on the ground and needing explanation often could not be explained. The courts of first instance have the power, and perhaps they should exercise it, to regulate this matter by reasonable rules.

The judgment is reversed and a venire facias de novo awarded.