## Annie E. Stork *v.* City of Philadelphia, Appellant.

*Road law—Injury caused by negligence in exercise of right of eminent domain—Constitution, article 16. section 8—Act of May* 16, 1891, *P. L.* 75.

The absolute liability imposed upon a municipality by the constitution for injury to property, and put by the constitution on the same footing as a taking for public use, is such injury only as is the direct, immediate, necessary and unavoidable consequence of the act of eminent domain itself irrespective of care or negligence in the doing of it. For such injury a proceeding before viewers is the appropriate remedy; but for injury by negligent performance of the work, the remedy must be by action of trespass.

Where a city in the construction of a subway for a railroad changes the grade of an established street, and excavates a lot abutting upon the street in such a negligent manner, that a house adjacent to such lot, but not on the line of the improvement, is injured, the remedy of the owner of the house is by an action of trespass against the city, and not by proceedings before viewers. DEAN and MESTREZAT, JJ., dissent.

Argued Jan. 15, 1900. Appeal, No. 280, Jan. T., 1899, by defendant, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1894, No. 876, on verdict for plaintiff. Before GREEN, C. J., MITCHELL, DEAN, FELL, BROWN and MESTREZAT, JJ. Reversed.

Appeal from jury of view. Before ARNOLD, P. J.

At the trial it appeared that plaintiff owned a lot of ground on Eighteenth street about fourteen feet south from the south building line of Pennsylvania avenue. A dwelling house was erected upon the lot. In the course of construction of the Reading railroad subway the contractors tore down the house between plaintiff's house and Pennsylvania avenue, and proceeded to dig away the ground upon which it stood. In making the excavation it was alleged that they neglected to protect the

plaintiff's house from injury, and the consequence was that its walls settled and cracked. The court directed a verdict for plaintiff.

Verdict and judgment for plaintiff for $2,350. Defendant appealed.

*Error assigned* among others was in directing verdict for plaintiff.

*Francis L. Wayland*, assistant city solicitor, with him *John H. Maurer* and *John L. Kinsey*, city solicitor, for appellant.—The remedy for recovering damages for property taken, injured or destroyed is separate and distinct from that obtaining where the injuries inflicted have been due to the manner of the construction of the public improvement: Denniston v. Phila. Co., 161 Pa. 41; McGettigan v. Potts, 149 Pa. 155.

The rule that an owner is entitled to lateral support for his ground extends only to support for his ground in its natural state, and does not include such support for the protection of buildings or other structures placed upon it: McGuire v. Grant, 1 Dutcher (N. J.), 356; Gilmore v. Driscoll, 122 Mass. 199; Quincy v. Jones, 76 Ill. 231; Transportation Co. v. Chicago, 99 U. S. 635.

*John C. Bell*, with him *Charles L. Brown*, for appellee.—We maintain that the plaintiff's case is directly within the letter and spirit of section 8, article 16 of the constitution of 1874, and of the act of May 16, 1891, providing for proceedings before viewers: Ladd v. City, 171 Pa. 485; Mellor v. City, 160 Pa. 614; In re Melon Street, 182 Pa. 405; Snyder v. Lancaster, 20 W. N. C. 185; Plumb's App., 166 Pa. 340; Walnut St. Bridge, 191 Pa. 156; Chatham Street, 191 Pa. 604.

OPINION BY MR. JUSTICE MITCHELL, March 12, 1900:

In the construction of a public improvement, known as the subway, for the avoidance of grade crossings of the streets of the city, and the tracks of the Reading railroad, the grade of Pennsylvania avenue was lowered and it became necessary to build a retaining wall to support the soil at the sides. Plaintiff was the owner of a house which fronted on Eighteenth

street.    Neither it nor the lot on which it was built abutted
at any point on Pennsylvania avenue, but the lot extended
back towards the avenue so that the nearest corner was four
feet at the bottom, and twelve feet at the top from the exca-
vation made to receive the retaining wall.    During the con-
struction, the house next to plaintiff's and between it and
Pennsylvania avenue was torn down, and some months later
the plaintiff's house settled, the walls cracked and had to be
taken down.    For this injury claim was made before the jury
of view to assess damages for the construction of the subway,
and on appeal to the common pleas, the city defended on the
ground that as the property did not abut on the line of the
avenue and the injury was not the result of the improvement
itself, but of the manner in which it was done, the claim for
damages was not within the jurisdiction of the viewers, and
the liability of the city could only be sustained by an action
of trespass for negligence.    The court overruled this defense
and held that the case was one for the viewers.

Although the contention is thus apparently in regard to the
form of the remedy, yet the fundamental question in the case
is whether under the constitution and the Act of May 16, 1891,
P. L. 75, the liability of the city for damages for property in-
jured in the construction of public work is limited to injury
resulting from the work itself, or extends to that arising from
the manner in which it was done.

Section 8 of article 16 of the constitution provides that
" municipal and other corporations and individuals invested
with the privilege of taking private property for public use
shall make just compensation for property taken, injured or de-
stroyed by the construction or enlargement of their works,
highways or improvements."    The purpose of this provision is
clearly shown by the history of litigation before its adoption.
The constitution of 1838 in article 7, section 4, provided that
"the legislature shall not invest any corporate body or individ-
ual with the privilege of taking private property for public use,
without requiring such corporation or individual to make com-
pensation to the owners of said property," and in the bill of
rights (article 9, section 10) it was declared " nor shall any man's
property be taken or applied to public use . . . . without just
compensation being made."    Under the uniform construction

given to these provisions, and to similar ones in other states, there was no liability unless property was actually taken. If an inch of his lot was taken in widening a street, the owner had his claim for compensation, but the far greater injury of blocking up or impeding his access by raising or lowering the street without actually encroaching on his line went without redress. Thus in Green v. Boro. of Reading, 9 Watts, 382, the borough filled up the street in front of a house so as to obstruct the access and deprive the owner of the use of an alley; in Henry v. Pittsburg and Allegheny Bridge Co., 8 W. & S. 85, a similar obstruction was made by the erection of the abutments of a bridge; in O'Connor v. Pittsburg, 18 Pa. 187, the street was lowered in grade to such extent as to impair the safety of the cathedral and perhaps necessitate taking it down; and in Monongahela Nav. Co. v. Coons, 6 W. & S. 101, the company by its dam erected to aid slack water navigation backed the water up so as to make useless a mill dam previously erected by a riparian owner under the license of the act of 1803. All of these cases were held to be consequential injuries for which there was no right to compensation. In the last mentioned case Chief Justice Gibson says: "In one instance a profitable ferry on the Susquehanna was destroyed by the Pennsylvania canal; and in another an invaluable spring of water at the margin of the river near Selinsgrove was drowned. These losses like casualties in the prosecution of every public work are accidental but unavoidable." In Henry v. Bridge Co., supra, the court said, "The plaintiffs recovered, doubtless rightfully, for turning the water on their ground; for the authority of the state cannot be implied for negligence; but for unavoidable damage in the accomplishment of the object, the defendants are not liable." So great was the hardship felt to be, that in O'Connor v. Pittsburg, supra, Chief Justice Gibson said, "We have had this cause reargued in order to discover if possible, some way to relieve the plaintiff consistently with law; but I grieve to say we have discovered none."

This was the condition of the law which the present constitution meant to change by the provision for compensation for property "injured or destroyed." And the injury meant to be provided for was such as in the language of Navigation Co. v. Coons, and Henry v. Bridge Co., supra, was "unavoidable in

the accomplishment of the object." For such injury there was no redress under the former constitution, and it was to remedy this defect that the present constitution added property "injured or destroyed" to property "taken," compensation for which has always been secured. For negligence in the manner of doing the work, there is and always has been a liability and adequate redress by an action on the case. Such injury was not in need of any additional remedy and none was contemplated by the provision in question.

The difference in the modes of procedure is much more than one of form. It involves substantial difference of the rights to be vindicated and perhaps of the parties to be fixed with responsibility. For such injury as is the direct and necessary consequence of the act itself of eminent domain, the liability of the city under the constitution is absolute, and no care or diligence will relieve it. But for damage resulting from the manner in which the act is done, the city is only liable by reason of negligence. Such damage is like the deprivation of land in an artificial state with buildings on it, of its lateral support. It is subject to the right of the adjoining owner to excavate his own land, without liability for consequences unless they are due to want of proper and reasonable care on his part. To throw these two kinds of claims into a single action involves the serious inconvenience of expecting the jury to keep the line of distinction clearly in view and to apply the evidence to each side of the line appropriately, with the further difficulty that the measure of damages is wholly different. In the present case the plaintiff's house was not directly affected by the city's act of eminent domain. If the subway had been dug by a private citizen on his own land, without negligence, there would have been no liability on his part. The city's liability is no different for there is no necessary connection between the thing to be done and the injury sued for. The plaintiff's own witnesses testified that the injury could have been avoided by proper precautions before taking down the adjoining house. It was, therefore, as much the result of the manner of doing the work, as if in excavating the subway an excessive blast had thrown a piece of rock and injured a house a square or more away. For that class of injuries the only appropriate remedy is an action of trespass for negligence.

The present question has not heretofore been before the court in reference to municipal improvements.

In Snyder v. City of Lancaster, 20 W. N. & C., 184, a part of the rear of plaintiff's lot was taken in the widening of a street. The case was therefore properly before a jury of view, and though no part of the house was taken, yet owing to the manner in which it was built against the adjoining house a special injury to it was a necessary consequence of the act itself of taking the adjoining house. This court therefore held that the whole injury to the house as well as to the lot was a necessary result of the opening of the street.

Ladd v. Philadelphia, 171 Pa. 485, chiefly relied on by appellee, was an action of trespass, and all question on the form of remedy was expressly waived by agreement. The case was tried on the issue of fact whether the cause of the cracking of the walls was the construction of the sewer by the city or the insecure nature of the made ground on which plaintiff's house was built. The question developed in the present case was not the basis of decision, and the language of the opinion must be taken in connection with the case as then presented. Whether the result was consistent with the settled rule of law as to lateral support of land in an artificial state we are not now called upon to consider.

In Mellor v. Philadelphia, 160 Pa. 614, access to plaintiff's house was cut off by the lowering of the grade of the two cross streets between which the house was situated, and it was held that although his house did not abut directly on the line of the improvement, yet the latter resulted in such proximate and immediate injury as to bring him within the constitutional protection. The words necessary or unavoidable were not used in connection with the injury, but were so obviously applicable that no question was raised which called for discussion of that point.

In Melon Street, 182 Pa. 397, the question was whether the injury to plaintiff by cutting off the street at one end of the square in which his house was situated was an injury different in kind as well as in degree, from that to the general public. There was no question that it was the direct and necessary result of the city's act in vacating the street.

The cases of Walnut Street Bridge, 191 Pa. 153 and Chatham

Street, 191 Pa. 604, rest on the same basis, that the injury was the direct and necessary result of the city's act without regard to the manner in which it was done.

But though the question has not directly arisen or been discussed in regard to municipal improvements, the principle has been clearly enunciated and applied to the analogous case of the exercise of eminent domain by a pipe line for transporting gas. In Denniston v. Philadelphia Company, 161 Pa. 41, the defendant company under its right of eminent domain laid a pipe through plaintiff's farm, the plaintiff proceeded for damages before viewers and on appeal before a jury in the common pleas. In the opinion of this court our Brother McCollum said: " The inconveniences and injuries caused by the location of a skilfully constructed and carefully operated pipe line may be considered in a proceeding for the assessment of damages to the land through which it passes, but such as are produced by the careless construction and operation of it, cannot be. The former are the natural and ordinary consequences of the location, construction and use of the line, and terminate only with the abandonment of it, while the latter are exceptional and may be prevented by the use of the best known appliances and skill, and the observance of due care in the prosecution of the business, and they constitute an independent cause of action. In this case the plaintiffs were entitled to be compensated for the depreciation in the market value of their farm, due to the location and construction of the pipe line, but not for injuries caused by the negligent operation of it." The learned judge at the trial had instructed the jury correctly in accordance with the rule thus laid down, but the judgment was nevertheless reversed because the evidence had failed to give the jury any clear means of discriminating between the two classes of injury. " The evidence in cases of this nature should be restricted to matters proper for consideration in ascertaining the depreciation in the market value of the land. . . . An injury which is or may be produced by negligence in the operation or care of the line is not such a matter. It may be that the leakage complained of in the case before us was due to the company's negligence. . . . . There was no attempt to show that it was inseparable from, or a natural and ordinary consequence of the location and construction of the line: " Denniston v. Philadelphia Company,

161 Pa. 46. After a second trial the case came up again for review before the Superior Court, and was again reversed for substantially the same errors : Denniston v. Phila. Co., 1 Pa. Superior Ct. 599.

The rule which was thus emphatically enforced and which is the logical deduction from the history of the amendment to the law, is that the absolute liability for injury to property imposed by the constitution, and put by it on the same footing as a taking for public use, is such injury only as is the direct, immediate and necessary or unavoidable consequence of the act of eminent domain itself, irrespective of care or negligence in the doing of it. For such injury a proceeding before viewers is the appropriate remedy. But for injury by negligent performance of the work the remedy must be by action of trespass.

In the present case the injury complained of was not the necessary consequence of the improvement authorized and undertaken by the city. The plaintiff's own witnesses as already noted testified that it could have been avoided by due care. The liability declared upon, therefore, arose if at all from negligence, and could not be enforced in this form of proceeding. It is said that the city is estopped from setting up this objection by the fact that the plaintiff appeared before the viewers in response to notice to do so. But no notice from the viewers could give them any authority to pass on a question of liability which the law has not put within their jurisdiction.

Judgment reversed.


MR. JUSTICE DEAN, dissenting:

The city did not appropriate plaintiff's land, but in constructing a lawful improvement it injured and destroyed her house. The constitution expressly gives her a remedy for damages. I can see no substantial distinction between the facts in this case and those in Snyder v. Lancaster City, 20 W. N. C. 184. I would affirm the judgment, on what seems to me the unanswerable opinion of the learned judge of the court below on motion for a new trial. For the reasons therein given I dissent from the judgment of the court in this appeal.

MESTREZAT, J., joins in this dissent.