# Ralston *v.* Sharon Hill Borough, Appellant.

*Sewers—Damages—Evidence—Eminent domain.*

1. On the trial of a feigned issue framed on an appeal from a report of viewers appointed to assess damages for the construction of a sewer, the right of the plaintiff to recover is limited to the damages arising from such injuries as were the direct, immediate and necessary or unavoidable consequences of the act of eminent domain itself, irrespective of the care or negligence in the performance thereof. If the injury results from negligence in the performance of the work, the remedy of the landowner is by an action of trespass.

2. In a proceeding to assess damages for the construction of a sewer, the courts are without power to review the discretion of the municipal-

ity in adopting a plan for the location of the sewer. Evidence is therefore not admissible which tends to show that some other plan might have been more beneficial or less injurious.

3. In assessing damages by the statutory proceeding for the taking of land for a sewer the jury may consider as entering into the element of damages, the amount of space occupied by the earth taken from the ditch, the travel of men and wagons along its course, the length of time occupied, and the character and value of the crops on the ground; but in considering such testimony they are not to consider any damages arising from negligence in the doing of the work.

Argued Nov. 18, 1909. Appeal, No. 227, Oct. T., 1909, by defendant, from judgment of C. P. Delaware Co., June T., 1907, No. 231, on verdict for plaintiffs in case of Hector M. Ralston et al., trading as Ralston Brothers, v. Sharon Hill Borough. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD, BEAVER and PORTER, JJ. Affirmed.

Feigned issue on appeal from an award of a jury of view assessing damages for the construction of a sewer. Before JOHNSON, P. J.

At the trial when the plaintiff was on the stand, he was asked this question:

"Q. What is your estimate of the amount of damage done to you by the construction of this sewer and the manner it was constructed through your property?"

Mr. Bliss: I object to that. The question is not what the damage was arising from the manner in which it was constructed, but, what was the damage arising from the necessary construction of the work?

Objection overruled.

To which ruling counsel for the defendant objects and prays the court to seal a bill of exceptions thereto, which is accordingly done. [1]

"A. About a ton and a half of hay was destroyed. Q. And that was worth what? A. Well it was worth about $18.00 a ton. . . . Q. What was your idea of the damage to your corn, the four acres altogether? What

was absolutely destroyed and what you could not cultivate."

Mr. Bliss: I suppose my objection and exception applies to this?

The Court: Yes.

Mr. Hall: "Q. Have you figured that? A. The corn is worth about $200. The corn I had in that patch."

The Court: "Q. Not what the corn was worth. What was the damage? A. I guess they done about $100 worth of actual damage."

Mr. Hall: "Q. You say that during those eight days you had to keep your cows in? A. I had to keep them in the stable and in the barnyard for eight days. . . . Q. And during that time you had to feed them hay and feed? A. Had to feed them hay and grains in the stable. . . . Q. That cost you how much? A. The grains cost me $6.00 a load. Q. You had three loads. Your hay cost you $27.00? A. Twenty-seven dollars. . . ."

Mr. Hall: "Q. What further damage did you sustain by reason of this blocking of this passage so far as the operation of your milk dairy was concerned? A. My cows milked from 320 to 330 quarts a day—before a couple of days they were down to 180 and 190 quarts. . . . Q. How do you determine about the amount? A. Well, they went down about 130 quarts. That is what they dropped. . . . Yes. That was an actual loss to me. If it had not been for that, they would not have went down. Q. You were supplying milk? A. I was supplying milk for my customers' trade in Philadelphia. Milk routes. I had to turn around and buy that milk at the depot. During July, I had to pay seven cents a quart for about 130 to 140 quarts of milk, for about twenty days, and after that time, milk got a little plenty again and I paid five cents. . . . Q. Then you were again put to the expense of keeping your cattle? A. Yes. Had to keep them in the barn and in the yard again. Q. Did you keep an account of what the expense was? A. Yes. I fed about twenty-five bushel of grain extra to my cows, and in

them twenty-one days I judge I used about three ton of hay. . . . Q. For how many days? A. Twenty-one days. . . . Q. Was there any loss of milk supply then? A. My cows went down about fifty quarts then. . . . Q. You lost fifty quarts for twenty-one days? A. Twenty-one days. Q. It was worth what then? A. Five cents a quart. I had to go and buy from a milkman."

Defendant presented this point:

4. Under the testimony in this case, the plaintiffs cannot recover for the alleged loss of milk caused by their being deprived of pasture, since it has not been shown that this deprivation was the necessary result of the work undertaken by the borough, to which the answer of the court was as follows: *Answer:* That is a question for the jury. We cannot say that as a matter of law. If you find from the testimony that this loss of milk, and this money that he said he expended for grains and hay arose—could have been avoided by the contractor—why, of course, this point would be affirmed, but, as that is a question of fact, we decline to affirm it and submit it to the jury to say whether it is so or not. [2]

5. The plaintiffs having failed to show what part, if any, of the damage sustained by them was the necessary result of the laying of the sewer, the verdict must be for the defendant. *Answer:* Refused. [3]

6. Under all the evidence the verdict must be for the defendant. *Answer:* Refused. [4]

Verdict and judgment for plaintiffs for $300. Defendant appealed.

*Errors assigned* were (1) rulings on evidence, quoting the bill of exceptions; (2–4) above instructions, quoting them.

*Edward P. Bliss,* for appellant.—This case falls directly within the ruling in Chatham Street, 16 Pa. Superior Ct. 103.

*E. H. Hall,* for appellees.

OPINION BY ORLADY, J., July 20, 1910:

The borough of Sharon Hill, by proper proceedings, decided to construct a system of public sewers, and in order to connect this system with Darby creek, they entered into an agreement with the owner of intervening land, known as the Lafferty farm of 112 acres, by which they obtained the right to lay two lines of terra cotta pipe across his land, aggregating about 1,300 feet in length. The plaintiffs were tenants of the property and operated it as a dairy farm. Not being able to agree with the borough in regard to the payment of the damages claimed by them for the entry upon the farm during their tenancy, they presented their petition for the appointment of viewers to assess the damages, and this action is a feigned issue, framed on an appeal from the award of a jury of view in that proceeding.

There can be no ground for controversy as to the law applicable to this case. In Chatham Street, 16 Pa. Superior Ct. 103, it was held that the municipal authorities, when adopting a plan for the location of a street, sewer or other improvements, are vested with a discretion which the courts are without power to review; and in passing upon the benefits or damages arising from the execution of the plan, evidence tending to show that some other plan might have been more beneficial or less injurious is not admissible. A claimant is not to be thrown out of court merely because in the opinion of the viewers, court or jury, the municipality might have adopted a different plan which would have served all useful purposes and worked no injury to the adjoining property. The injuries for which the municipality must answer in an action of trespass are those which result from negligence in the execution of the plan adopted. And as in Stork v. Philadelphia, 195 Pa. 101. The right of the plaintiff to recover in this action was limited to the damages arising from such injuries as were the direct, immediate and necessary or unavoidable consequences of the act of eminent domain itself, irrespective of care or negligence in the

performance thereof.   For such injury a proceeding before viewers is the remedy provided by law.   But if the injury resulted from negligence in the performance of the work the remedy must be by an action of trespass.

In Fyfe v. Turtle Creek Boro., 22 Pa. Superior Ct. 292, we said that when the improvement is the direct and proximate cause of an injury and the loss is the necessary and unavoidable consequence of a careful execution of the work, the land and every right of property thereto appurtenant is within the protection of art. XVI, sec. 8, of the constitution of Pennsylvania, and the act of May 16, 1891, P. L. 75, affords a prompt and appropriate remedy.

In this case the trial judge repeated the rule above announced a number of times in his general charge and concluded, as follows: "Now, this question is for you, gentlemen.   It is all a question of fact.   Take it and dispose of it, and award to these plaintiffs what they suffered, what their injury was from the necessary consequences of this work on this plan, and dismiss from your mind all damage that was caused by negligence in its execution."

The case was tried with great care both by counsel and court and the principal contention was in regard to the manner in which the work was done, the use of certain machinery, the amount of space occupied by the earth taken from the ditch, and the travel of men and wagons along its course, the length of time occupied, the character and value of the crops on the ground, all of which were properly submitted to the jury in a manner that could not be misunderstood.   The appellees were excluded from the use of the land during the time of the construction, nor could they interfere with the work, nor fix a time when it should be completed.   It was purely a case for the jury, and was so regarded by the defendant as it adduced testimony in regard to the damages claimed by the plaintiff, so that there could be no binding instructions in its favor as asked for in a point submitted, nor do we find any error in receiving the testimony represented by the assignments of error.   They are excerpts from a full examination of

the witnesses, who were fully cross-examined, and the subject-matter of their testimony carefully investigated. The credibility of the witnesses and the effect to be given their testimony was for the jury.   The assignments of error are overruled and the judgment is affirmed.