Locust Street Subway Construction.
North Broad Street Subway Construction.

Argued November 13, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Howard E. Stern,* with him *Joseph H. Lieberman, Edwin S. Ward,* Assistant City Solicitors, and *David J. Smyth,* City Solicitor, for appellant.

*Bertram G. Frazier,* with him *John W. Frazier, Jr.,* and *B. Graeme Frazier, Jr.,* for appellees.

OPINION BY KELLER, J., March 13, 1935:

The City of Philadelphia, pursuant to lawful authority, constructed subways on Broad Street and on Locust Street, respectively, and in the excavation, construction and improvement of the tunnel for said subway it was necessary to blast with giant powder, dynamite and other high explosives. While doing this blasting for the tunnel construction in a careful and non-negligent manner, the direct, immediate, unavoidable and necessary results of said construction were such that the buildings of certain property owners abutting on said streets directly facing on said subway construction were permanently injured, loosened, cracked and dislocated. Petitions for the appointment of viewers to view and assess the damages suffered by these property owners were presented to the Court of Common Pleas No. 5 and the Court of Common Pleas No. 1, respectively, on which juries of view were respectively appointed, who after viewing the premises and hearing the witnesses made reports finding that the Memorial Baptist Church had been so dam-

aged in the construction of the Broad Street subway in the amount of $1,511; and the Finance Realty Corporation had been so damaged in the construction of the Locust Street subway in the amount of $607; that said damages were the direct, immediate, necessary and unavoidable result of a careful and non-negligent execution of the construction of said subways, and were not the consequence of any negligence or lack of care in the doing of the work. The City of Philadelphia filed exceptions to the several reports denying any liability on its part to the injured property owners for the damages caused them by the construction of said subways in the manner aforesaid. The respective courts dismissed the exceptions, the opinion in Common Pleas No. 1 being filed by President Judge McDevitt, and that in Common Pleas No. 5 being filed by Judge Lamberton. The city has appealed from both orders.

The opinions filed by the learned judges of the courts below fully warrant their action in dismissing the exceptions of the city and confirming the reports of the viewers. Either of them would be sufficient to warrant an affirmance by this court, but, as they approach the matter from somewhat different standpoints, it is, perhaps, advisable to present both points of view in this opinion.

At the outset it must be remembered that the city does not here deny that the damages for which compensation is sought in these proceedings are the direct, immediate, necessary and unavoidable result of the construction and enlargement of the city's works. Any question as to the damages being the result of the careless or negligent doing of the work is here eliminated; for it was admitted by all parties that if they were due to or caused by any negligence or carelessness in the work of construction the remedy would have to be by action of trespass against the person or corpo-

ration responsible for such negligence. The City of Philadelphia is a municipal corporation and hence directly within the provisions of Article XVI, Section 8 of the Constitution, as follows: *"Property Taken, Injured or Destroyed by Private and Municipal Corporations.* Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, injured or destroyed by the construction or enlargement of their works, highways or improvements, which compensation shall be paid or secured before such taking, injury or destruction. The general assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall on the demand of either party be determined by a jury according to the course of the common law." Furthermore, the injuries involved are not the consequential damages to a *physically uninjured structure* caused by a mere change of grade. The buildings themselves have been physically shattered and injured as the direct, immediate and unavoidable result of the construction and enlargement of the city's works, highway and improvement. It would seem plain, therefore, that the City of Philadelphia must make just compensation for the property so injured.

On this point Judge LAMBERTON says very pertinently: "The City contends that, in spite of this provision in the Constitution, compensation need not be paid unless so provided by statute. Counsel overlooks the fact that the wording of the Constitution is mandatory, and that the Constitution is the supreme law of the State. To hold as the City requests would be to hold that an act of the legislature is more potent than a provision of the Constitution. It would mean

that, although the Constitution says a municipal corporation shall make just compensation, this need not be done unless the legislature so directs. Much confusion has arisen because of appellate court decisions involving the liability for consequential damages of governmental agencies not included within the wording of Article 16, Section 8, notably the Commonwealth of Pennsylvania. Article 16, Section 8, does not apply to the Commonwealth, and the only limitation upon the rights of the Commonwealth in such matters is that contained in Article 1, Section 10, which provides '. . . . . . nor shall private property be taken or applied to public use without authority of law and without just compensation being first made or secured.' The Commonwealth is therefore not liable for consequential damages in the absence of a statute imposing such liability upon it, but the Commonwealth is liable for consequential damages if there is a statute so providing. State Highway Route No. 72, 265 Pa. 369. Soldiers and Sailors Memorial Bridge, 308 Pa. 487. If we were to follow the reasoning of the City, Article 16, Section 8, of the Constitution would be meaningless. Article 1, Section 10, applies to municipalities as well as to the Commonwealth. If this provision stood alone, liability for consequential damages could be imposed upon the City by an act of assembly, just as it can be imposed upon the Commonwealth. What then is the meaning of Article 16, Section 8? According to the City it means nothing whatever.''

Certainly, in providing in Article XVI, Section 8, that municipal, as well as private, corporations must make just compensation for property *injured or destroyed,* as well as for property *taken,* the framers of the Constitution must have intended to go farther than Article I, Section 10, which protects the citizen as to property *taken* for public use by either Commonwealth or municipal corporation, without any action

by the legislature. The very wording of Article XVI, Section 8, contemplates the appointment of viewers, or some similar body, to assess such damages, with an appeal to the courts and a jury trial according to the course of the common law, if desired. If the general assembly is expressly prohibited from depriving any person of an appeal from an assessment by viewers, it would seem that an assessment by viewers was necessarily implied, and that it is not within its powers to nullify the constitutional provision by mere inaction. The Act of June 23, 1911, P. L. 1123, sec. 5, as amended by Act of April 30, 1929, P. L. 866, sec. 1, 16 PS sec. 3114, makes general provision for the appointment of viewers wherever a petition is presented for the "appointment of viewers, reviewers, or re-reviewers, or of a jury of view, of a road jury, or of commissioners of view or of any person or body under any designation for the purpose of viewing ....... or constructing of roads, streets, highways ...... or for the assessment of damages occasioned by such ...... constructing of roads, streets, highways ...... or *occasioned* by any appropriation of land by municipalities and of other corporations having the power of eminent domain." See Reber's Petition, 235 Pa. 622, 84 A. 587.

Under the Constitution of 1838 (Art. VII, sec. 4) it was provided: "The legislature shall not invest any corporate body or individual with the privilege of taking private property for public use, without requiring such corporation or individual to make compensation to the owners of said property, or give adequate security therefor, before such property shall be taken." The provisions of Article XVI, Section 8, of the present Constitution mark an advance for the protection of the citizen, and specifically apply to *municipal* as well as *private* corporations, invested with the power of eminent domain, and extend the damages

for property *taken* to damages for property *taken, injured or destroyed.*

In many of the cases which considered the subject of compensation for property injured or destroyed, as distinguished from property taken, there was a failure to differentiate between cases which came within Article XVI, Section 8, of the Constitution and those which did not. They are cited indiscriminately. (1) Thus townships are not municipal corporations. They have no power of eminent domain with respect to highways, and they do not take the land or lay out the road, or pay the damages for the land taken. The court of quarter sessions ordains township roads and orders them laid out, and the damages are paid by the county. Hence, townships are not within Article XVI, Section 8: Wagner v. Salzburg Twp., 132 Pa. 636, 647, 19 A. 294; Shoe v. Nether Providence Twp., 3 Pa. Superior Ct. 137, 139; Snively v. Washington Twp., 218 Pa. 249, 67 A. 465; Schlosser v. Manor Twp., 293 Pa. 315, 142 A. 322; Herrington's Petition, 266 Pa. 88, 109 A. 791; State Highway Route 72, 265 Pa. 369, 372, 108 A. 820. Yet, notwithstanding this fact, cases dealing with townships have frequently been cited as if applicable to cases involving the liability of municipal and other corporations under Article XVI, Section 8, of the Constitution.

(2) So also, the Commonwealth is not included within the provisions of the Constitution requiring compensation to be made by municipal and other corporations for property *injured or destroyed* (Art. XVI, Sec. 8). It is only required to make or secure just compensation for property *taken* (Art. I, Sec. 10). But the Constitution does not prevent the legislature from making the Commonwealth liable for damages for property injured or destroyed, as well as taken, if it sees fit to do so; but one claiming that the Commonwealth is liable for damages for property injured or

destroyed must show clear legislative authority imposing such liability on the Commonwealth. Hence we have a long line of cases denying liability for consequential damages where the Commonwealth appropriated the land or constructed the works or improvement, because the legislature had not assumed such liability on behalf of the Commonwealth. See, inter alia, McGarrity v. Com., 311 Pa. 436, 166 A. 895; Soldiers and Sailors Memorial Bridge, 308 Pa. 487, 162 A. 309; State Highway Route 72, 265 Pa. 369, 108 A. 820; Jamison v. Cumberland County, 234 Pa. 621, 623, 83 A. 582; Blainesburg-West Brownsville Road, 293 Pa. 173, 179, 142 A. 319; Schlosser v. Manor Twp., 293 Pa. 315, 142 A. 322; Wangner v. Bucks County, 82 Pa. Superior Ct. 448. But, here again, these cases have been, from time to time, cited as if they applied to cases which involved the liability of municipal and other corporations under Article XVI, Section 8.

(3) Again, the Constitution gives no remedy at all by way of action for damages or award of viewers, for injury sustained by a landowner because of the *vacation* of a street or highway, and in the absence of special legislative provision damages could not be recovered: Howell v. Morrisville Boro, 212 Pa. 349, 352, 61 A. 932. Various acts have, in consequence, been passed permitting damages to be recovered where property is injured by the vacation of a street, (see inter alia, Acts of May 28, 1913, P. L. 368 and June 27, 1913, P. L. 633), and, since then, damages are recoverable where such vacation constitutes a substantial interference (Spang v. Com., 281 Pa. 414, 126 A. 781) with the use of one's property, provided the liability therefor is founded on clear legislative authority—see Donnelly v. P. S. C., 268 Pa. 345, 352, 112 A. 160; Hedrick v. Harrisburg, 278 Pa. 274, 122 A. 281; Holmes & Holmes v. P. S. C. (No. 2), 79 Pa. Superior Ct. 381, 387, 388. But cases dealing with *vacation* of

streets, etc., have no relevancy in considering liability under Article XVI, Section 8, of the Constitution; for they are outside the constitutional provision.

(4) Article XVI, Section 8, of the Constitution is also limited by its express terms to property taken, injured or destroyed by the *construction or enlargement* of works, highways or improvements. It has no application to damages alleged to have been caused by the *use or operation* of the corporation's improvement. Thus in Struthers v. Dunkirk, etc. Ry. Co., 87 Pa. 282, the defendant's railroad was constructed in 1871, before the adoption of the present Constitution, and hence it was not liable for any consequential damages which attended its *construction;* but the plaintiff sought in an action of trespass to recover damages for the annoyance caused by the passage of trains, the cinders and smoke and the hindrance to the passage of carriages caused by the *operation* of the railroad which was built on the street in front of plaintiff's dwelling-house; and it was held he could not recover. To the same effect is Penna. R. Co. v. Lippincott, 116 Pa. 472, 9 A. 871, an action of trespass on the case for damages resulting "wholly from the manner in which the roadway is *used;* results from the noise, smoke and dust arising from the use of the engines and cars; the necessary consequence of the *use* of the property as a steam railway" (p. 481), and it was held that as "the plaintiffs sustained no injury from the construction of the viaduct" (p. 483), there could be no recovery, because it was not within the language of the Constitution. See also, Penna. R. Co. v. Marchant, 119 Pa. 541, 13 A. 690. These cases have no direct bearing on the liability of a corporation, municipal or private, for property taken or destroyed in the *construction or enlargement* of its works or improvement.

The Supreme Court, departing from its former rulings in Pusey v. City of Allegheny, 98 Pa. 522; In re

Change of Grade of Chatham Street, 191 Pa. 604, 43 A. 365, and similar cases, has ruled that Article XVI, Section 8, does not apply to mere changes of grade of public highways or consequential injury resulting therefrom: Westmoreland Chemical & Color Co. v. P. S. C., 294 Pa. 451, 144 A. 407, chiefly relied on by appellant; Hoffer v. Reading Company, 287 Pa. 120, 134 A. 415; Ridgway v. Phila. & Reading Ry. Co., 244 Pa. 282, 90 A. 652; Gillespie v. B. R. & P. Ry. Co., 226 Pa. 31, 74 A. 738; and, therefore, that no damages caused an abutting landowner by a mere change of grade in a highway can be recovered, without express legislative action imposing liability therefor. The question actually litigated in Westmoreland Chemical & Color Co. v. P. S. C., supra, was whether the Public Service Commission could lawfully require the railroad company appellant, (Pittsburgh & Lake Erie Railroad Co.), to contribute to the payment of damages to Westmoreland Chemical & Color Company's property resulting from a change of grade due to an improvement which the Supreme Court called "a combination of a grade crossing case and a county bridge case"; and they held that the railroad company could be required so to contribute, because there was statutory authority for liability for damages due to change of grade in those cases. But, as before stated, the damages here asked for are not the consequence of any change of grade, but represent compensation for a physically shattered building, the direct, immediate and unavoidable result of the construction of the city's improvement, without any allowance for negligence in such construction.

But under the appellant's own construction of the law we think the city is liable for these damages, which are the "natural and necessary result of the construction" of the city's improvement. It is true that the Act of June 17, 1913, P. L. 520, which empowers cities

of the first class to purchase, lease, locate, construct and equip, or otherwise acquire *transit facilities,* and to own, *maintain, use and operate* the same, within their corporate limits, *and within the limits of adjacent cities, boroughs and townships;* to exercise the right of eminent domain in connection therewith, and prescribing the manner of ascertaining the damages sustained in connection with such exercise; etc. [for full title see Act], does not, in sections 7, 8, 9 and 10, which provide for the payment or ascertainment of the damages for the 'lands, rights and interests therein, property or franchises' taken and appropriated under the powers conferred by the Act, specifically include damages for property 'injured or destroyed' in the construction or enlargement of the work. Judge LAMBERTON, in his opinion, and Judge FINLETTER, in a similar proceeding, In re North Broad Street Subway Construction, No. 12676 September Term 1926, Common Pleas No. 4, not reported, said on this point: "It is evident, in our opinion, that the procedure provided for by the Act of 1913 (notwithstanding the statute speaks only of property 'taken') was intended by the legislature to include all cases calling for remedy under the Constitution; that is, not only for property 'taken,' but also for property 'injured or destroyed.'" But apart from this, the Act of 1913, supra, was not necessary to enable the city to construct a tunnel or subway under a duly laid out and opened street within its limits, which was the work that caused the injury to appellee's properties. Had that been all that the city desired to do it would have needed no special enabling act. The Act of 1913 was needed to authorize the city to build and equip railways for the transportation of persons and property, and to operate and maintain the same, (Pittsburgh Rys. Co. v. P. S. C. and County of Allegheny, 115 Pa. Superior Ct. 58, 174 A. 670), not only in Philadelphia

but in adjacent cities, boroughs and townships; and to lease the same; to purchase, build, or construct power-houses, transmission lines, cars, and motive equipment and appliances and appurtenances necessary; to enter upon and condemn land, etc., outside city streets, but within the city limits, and also land outside the corporate limits of Philadelphia but within the corporate limits of adjacent cities, boroughs, and townships, as should be necessary for such transit facilities, and the numerous other rights and privileges granted in the first six sections of the Act over and beyond the mere construction of a subway. On this point, Judge McDEVITT aptly said: "The main purpose for the Act of 1913 was to extend the power of cities of the first class in connection with their transit facilities to give them the right to condemn property for facilities needed outside of a street and also to give them the right to lease or otherwise to arrange for the operation of city-owned subways by private corporations. These were new powers, not comprehended in the older acts, and necessitated the Transit Act, but there was no specific legislative authority needed for the mere construction of the subway in Eighth Street other than what the City already possessed under the older acts. Long before the Act of 1913, the City, by ordinance approved May 17, 1894, page 52, ordinance book of that year, authorized the director of the Department of Public Works to construct a subway in Pennsylvania Avenue from Broad Street to Thirtieth Street to carry the tracks of the Philadelphia and Reading Railroad Company and this subway was actually built and all damages paid for by the City itself as is shown in the case of Stork v. Philadelphia, 195 Pa. 101, [45 A. 678], as finally determined by the second appeal in the same case, reported in 199 Pa. 462, [49 A. 236]. The ordinance of June 13, 1901, page 153, as amended by the ordinances

of June 1, 1903, page 146, and March 28, 1906, page 42, authorized the Market Street Elevated Passenger Railway Company to construct the elevated railway on Market Street and the subway in Market Street. The City could not have authorized the company to do this work if it had not been able, under the existing legislative authority, to do the work itself. The Act of 1891 [May 16, 1891, P. L. 75, as amended by the Act of June 12, 1893, P. L. 459] gives the City power to extend its streets. The construction of sewers, subways, etc., are normal street uses, impose no additional servitude, and are within the inherent power of a municipality. This is recognized in McDevitt v. Gas Company, 160 Pa. 367. '...... in an urban district not only is the street intended for the passage of persons and vehicles, but the sub-soil may be used for the purpose of installing sewers, water and gas pipes, or even subways for electric lines or railroads.' Borough of Bellevue, 110 Pa. Superior Ct. 427, 436, [168 A. 485].'' In McDevitt v. People's Natural Gas Co., 160 Pa. 367, 374, 28 A. 948, the Supreme Court said: ''The city has the right to use the streets and alleys to whatever depth below the surface it may be desirable to go, for sewer, gas and water mains and any other urban uses.'' In Scranton v. Peoples Coal Co., 256 Pa. 332, 335, 100 A. 818: ''A city may go underneath the surface of its streets for the construction of pipe lines, conduits, etc., and for any other lawful municipal purpose.'' In Wood v. McGrath, 150 Pa. 451, 455, 24 A. 682, speaking of the powers of a municipality to use the subsurface of a street for lawful municipal purposes, Mr. Justice GREEN said: ''It is beyond all question that, in the municipal organization referred to, the governing authority possesses just as clear a right to make use of the subsoil as of the surface, for very many purposes for which the surface is not, and, ordinarily, cannot be, used except with

great inconvenience. It may undoubtedly, either by itself, or by its delegated authority to others, dig up the soil to lay water pipes, gas pipes, sewers, drains, electric wires, telegraph and telephone wires, cables and doubtless subterranean railways, every one of which uses is in direct and exclusive hostility to the abutting owners' right in the fee. And the grant of these privileges may be made, and is constantly made, to other corporations or associations without the least regard to the will or consent or property right of the adjoining owner." In Stork v. Phila., 195 Pa. 101, 45 A. 678, which was a case involving the construction of a subway, sixteen city blocks long, under a city street, to avoid railroad grade crossings, Mr. Justice MITCH- ELL discussed the law, as it existed before the adoption of the Constitution of 1874 and the wrongs to the citizen which Article XVI, Section 8, was designed to remedy, and held that for damages to an abutting landowner, in the way of settling buildings, cracking walls, etc., which were the direct, immediate and necessary or unavoidable result of the improvement the city would be responsible in damages to be ascertained by a jury of view, under the Act of May 16, 1891, P. L. 75; but as the injury in that case was not the necessary consequence of the improvement but could have been avoided by due care, as was testified to by the plaintiff's own witnesses, and therefore arose from negligence, he could not recover in a proceeding before viewers, but was obliged to bring action in trespass against the party responsible for the negligence. That would be this case exactly, if it had been developed before the viewers that the damages to appellees' properties were caused by the negligent construction of the work, for then the viewers would have no jurisdiction. The same ruling has been made by this court in Hirsh v. McGovern, 100 Pa. Superior Ct. 1, a case growing out of the construction of one of the sub-

ways involved in this proceeding, the opinion in which, by Judge CUNNINGHAM, we here reaffirm; and in Fyfe v. Turtle Creek Boro, 22 Pa. Superior Ct. 292, (appeal refused by Supreme Court, 23 Pa. Superior Ct. XXXI); and Borsalino v. Reading, 111 Pa. Superior Ct. 549, 170 A. 711, cases involving the construction of sewers, with consequent damage to abutting buildings. The law on the subject has nowhere been stated more clearly than in the opinion in the Fyfe case (22 Pa. Superior Ct. 292), written by Judge WILLIAM D. PORTER, afterwards president judge of this court, who was recognized for the exactness of his legal knowledge and expression.

The Act of May 16, 1891, supra, supplied the petitioners in these proceedings with ample legislative authority, if any were needed, to apply for the appointment of viewers for the ascertainment of the damages which they had sustained as the direct, immediate and necessary or unavoidable result of the construction of these subways by the city.

The appellee also contends, notwithstanding the decision in Stork v. Phila., supra, that the city is not liable in these proceedings because of the application of the rule relative to the right of 'lateral support.' Strictly speaking, the right of 'lateral support' exists between individual *owners of land* and is the right to have land in its natural state supported by the adjacent land. It is an incident to the land, a right of *property* necessarily and naturally attached to the soil. It is well settled that the right appertains only to the land, not to buildings or other artificial improvements erected thereon. When an owner makes an excavation upon his land, in a manner free from negligence, and so deprives a neighbor's property of lateral support, his liability for damages—except in unusual circumstances, see Durante v. Alba, 266 Pa. 444, 109 A. 796— is limited to the injury to the land without regard to

buildings. The city, in improving a street does not become an adjoining landowner. It has no right of 'lateral support' of the street improvements, as an incident to ownership of the land; but it has more. Where the city has improved a street, its rights, as the representative of the Commonwealth in the maintenance of the improved highway, are superior to those of an adjoining landowner, and are such that an abutting owner, in making excavations on his own land, is bound to support the highway in its improved condition: Pollock v. P. B. & L. E. R. Co., 275 Pa. 467, 119 A. 547; but that is because of the obligation which the citizen owes to the community and of the superior claims of the city, subject only to the paramount authority of the Commonwealth, in the maintenance of highways, (Southwark R. R. Co. v. Phila., 47 Pa. 314), not because it is a landowner entitled to lateral support. On this point the opinion of Judge PORTER in Fyfe v. Turtle Creek Boro, supra, is pertinent: "The appellant was not an adjoining owner of land in the sense in which that term is used in connection with the right of lateral support. It was the representative of the inhabitants of the borough, and held in trust for the public use an easement upon the land, with the right and power to construct therein sewers and subject it to other urban necessities or conveniences, but the fee was in the owners of the abutting land. The borough could not be called upon to make compensation for the imposition of an additional servitude upon the strip of ground within which the sewer was laid, but for an injury to the other property of the plaintiff directly and necessarily resulting from the construction of the sewer, compensation must be made: McDevitt v. People's Nat. Gas Company, 160 Pa. 367."

But the rule contended for does not apply here because the damages sought in this case were not caused by a withdrawal of support from the plaintiffs' soil,

with a resulting subsidence, but as the direct and immediate result of the necessary and non-negligent use of high explosives required in blasting, which cracked the walls and shattered the buildings. The case is governed by Stork v. Phila., supra, where the Supreme Court held that if the injury to plaintiff's building—practically identical in its effects to that done the appellees here—had been the necessary consequence of the construction of the subway—as is admitted here—he would have been entitled to an award covering the same from a jury of view. Along the same line is the case of Snyder v. City of Lancaster, 20 W. N. C. 184. There the City of Lancaster laid out Filbert Street at right angles to St. Joseph Street, and in doing so took most of the house of Ambrose Worth, which fronted on St. Joseph Street. It left, however, unsupported the gable end of the Worth house against which the house of Caroline Snyder was directly built. It was testified that the removal of so much of the Worth house as was needed to lay out Filbert Street, would, irrespective of any negligence on the city's part, leave the Worth gable wall so insecure as to cause it to fall, and its fall would leave the Snyder house without a gable end on that side. The Supreme Court, speaking through Mr. Justice GREEN, said: "It is testified that the plaintiff's house will have no gable end when the Worth house is taken down. If such is the case the plaintiff's house will certainly be *injured* by the removal of the Worth house, and as this removal is a necessary part of the opening of Filbert Street, we cannot avoid the conclusion that the opening of the street is, or will be, the direct cause of the injury to the plaintiff's house. This being so, the case comes within the operation of Section 8, Article 16, of the Constitution of 1874, and should have been submitted to the jury with proper instructions." The case was an appeal from a report of viewers.

We are not impressed by the argument of 'necessity' advanced by the city. If proper care is taken in the construction the damages which are the direct, immediate and necessary or unavoidable result of the work should not be so great as to interfere with the improvement. In constructions already finished involving over one hundred million dollars they are so inconsiderable as to be *de minimis*. If the damages are due to negligence in the construction or in the use of high explosives, etc., by a contractor, or in the method, quantity or manner of use, the city on showing such facts will escape liability in proceedings of this character: Stork v. Phila., supra; Hirsh v. McGovern, supra; Borsalino v. Reading, supra. If the injury cannot be avoided, however carefully the work is done, the damages, under the law, must be paid as part of the necessary cost of construction.

Appeal No. 469 October Term, 1934. The order is affirmed at the costs of the appellant.

Appeal No. 531 October Term, 1934. The order is affirmed at the costs of the appellant.