Lamont v. West Penn Power Co., Appellant.

Argued March 20, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, SADLER and SCHAFFER, JJ.

*Edward O. Tabor,* of *McCahill & Tabor,* for appellant. —Lamont's evidence should have been stricken out.

The witness, Stotler, was not qualified to express an opinion as to market value: Parry v. R. R., 247 Pa. 169; Friday v. R. R., 204 Pa. 405.

Defendant should have been allowed to cross-examine plaintiff's witness, Banks, to find out how much of the $6,000 depreciation he allocated to the improper element of "fear" of electric wires: Shuster v. Telegraph Co., 34 Pa. Superior Ct. 513; Sunbury R. R. v. Hummell, 27 Pa. 99; Wallace v. Gas Co., 147 Pa. 205.

The testimony of plaintiff's witness, Morrow, should have been struck out: Denniston v. Phila. Co., 1 Pa. Superior Ct. 599.

*Clyde A. Armstrong,* for appellee.—Where a company uses a dangerous agency, like an electric current of high power, ordinary persons must know that danger attends contact with electric wires: Morris v. Electric Co., 278 Pa. 361.

The trial court did not refuse to strike out Lamont's testimony: Western Penna. R. R. v. Hill, 56 Pa. 460; Pitts., V. & C. Ry. v. Vance, 115 Pa. 325.

The court did not err in charging the jury that appellee was entitled to the difference in the market value of the property before and after the construction of appellant's lines: Murphy v. Dyer, 223 Pa. 18; Leh v. Dutt, 66 Pa. Superior Ct. 171.

OPINION BY MR. JUSTICE FRAZER, April 14, 1930:

The West Penn Power Company in March, 1924, completed the construction of a power plant with high tension electrical transmission wires above a public road which traverses a triangular section of plaintiff's farm of five acres, in Plum Township, Allegheny County. The power cables, or lines, each carry and transmit 132,000 volts of electricity, and are suspended from steel towers, which structures are not upon plaintiff's land, but within 80 feet of it; and from these towers the wires extend over claimant's property. His dwelling

house, in which he resides, is distant 37.54 feet from the nearest wire, and other buildings, comprising a frame barn and a garage, are about the same distance from the wires. From the power plant, electricity of high voltage is transmitted over the line in question to various sections in Western Pennsylvania and in West Virginia. In 1927, upon application by Lamont, appellee here, averring that his property was damaged by the presence and operation of defendant's wires strung above it, viewers were appointed by the court, who awarded damages in the sum of $100. Lamont appealed from the award to the court of common pleas, where the case was heard before a jury and a verdict returned in favor of plaintiff for $3,000. A motion by defendant for a new trial was refused and this appeal followed.

As we understand the various assignments of error presented by appellant's counsel, the sum and substance of their complaints are, a lack of proper qualification of several of plaintiff's witnesses to testify to the market value of appellee's land before and after the construction of defendant's power plant; that in reaching their opinions as to the amount of damages plaintiff had sustained, their estimates were based on a consideration of injuries resulting from negligent construction and operation of the wires over appellee's premises, and alleged improper rulings of the trial judge. None of these assignments of error possess sufficient merit to sustain them, and we shall make specific reference to them only if required in our general discussion of the case.

It is true, as the record shows, that several of plaintiff's witnesses had a vague and confused notion that while they believed the erection and operation of the high tension wires seriously damaged appellee's premises, they should also consider, in reaching their beliefs, the danger that might result from negligent construction and operation of the lines. At its strongest, this testimony was indefinite and inconclusive; and the trial judge was prompt in removing whatever effect it might

have on the minds of the jury by preventing its admission. Not only was all such evidence ordered stricken out, but early in the trial the court made the following precise ruling on that sort of evidence, saying, within the hearing of the jury: "In fixing the measure of damages, I am going to allow the difference in the market value before and after [the erection and use of the wires]; but in taking into consideration the question of the market value after this, the witness can take into consideration the danger of accidents without negligence, the dangers which will probably not necessarily happen, but reasonably may happen without negligence." Since, however, appellant's counsel affect to believe that, notwithstanding this emphatic and proper ruling, the jurors were misled and prejudiced by witnesses taking into consideration, in estimating the injury to plaintiff's land, "damages that would result from defendant's negligence," we may here give brief attention to their assignment No. 5, as one typical of appellant's complaints on this subject. Counsel for defendant asked a witness for appellee, on cross-examination: "Mr. Alter, when you think of the dangers in connection with these wires, do you have in mind the danger which might come from their breaking on account of being poorly constructed? A. I do not. Q. They may break from being poorly constructed, may they not?" At this point, counsel for plaintiff interposed an objection, which was sustained. This forms the substance of the assignment of error, appellant claiming the court erred in not allowing defendant's counsel to cross-examine the witness "as to whether or not he had in mind danger which might come from defendant's negligent construction of the wires." This was exactly the evidence the court had previously ruled could not be admitted. Plaintiff in his pleadings made no averment whatever as to negligent construction and operation, or results therefrom. Subsequently, in his charge to the jury, the court expressly instructed them that their "investiga-

tion is limited exclusively to ascertain the question as to what, if any, damage results from the erection and operation of that line, and to ignore entirely any effect on the market value of the land from the possibility or probability of any danger coming to the abutting property, or to the persons and live stock on it, from the negligent operation or construction of the line. ......
These matters [as to negligence] are not settled in the question of the condemnation of an abutting property. They are not settled in this case in determining the damage which, if any, has been done to this plaintiff's property by the erection and operation of the electric line. If damages result in the future through the negligent operation of this line the owner of the property or the person damaged has his remedy in another proceeding;......your investigation is limited to the lawful, careful construction and operation of the line. I want to impress that on you in this case because it is a peculiar question." We think the various rulings of the trial judge and his careful instructions to the jury on this phase of the evidence were amply plain and sufficient to impel the jury to disregard injury from negligent operation in reaching a verdict. We accordingly do not sustain assignments Nos. 3, 4, 5, 9 and 10, all based on this subject.

We do not intend to follow the peculiar and unnecessarily wide range of argument traveled over by counsel for defendant in their printed brief; to do so would lead to an almost interminable discussion. The case here is not complex in either its nature or facts. Plaintiff claims his land was damaged, greatly depreciated in market value, by the erection and operation of the wires carrying an extremely high electrical voltage. He does not allege visible and material destruction of his premises, and to establish his claim he was not required to prove such destruction. Whenever an injury is done to a right, actual perceptible damage is not indispensable as the foundation of an action; but it is sufficient to

show the violation of the right and the law will presume the damage (5 Am. & Eng. Encyc. L. 2; Hood v. Palm, 8 Pa. 237) ; and, by reason of the additional servitude, constituted by the extension of the wires over his land, plaintiff, if damage to his land was established, is entitled to compensation (Sterling's App., 111 Pa. 35; Duquesne Light Co. v. Duff, 251 Pa. 607) ; and, when the taking is confined to a part of the owner's land, he is entitled to recover for all damages to his remaining land, whether special or shared by the public generally, provided they flow from the appropriation, since he is constitutionally to be made whole for all injuries resulting from the taking of his land: 2 Nichols's Eminent Domain, page 896.

Reliable evidence for plaintiff showed there was damage to his property, that such damage was the result of the lawful erection and operation of highly charged electric wires; that the injury to the property of the appellee was sustained immediately upon the construction of the power plant; that the danger was not remote, but present and apparent. The legal effect of this evidence presented by plaintiff established the fact of injury to his property; the jury found from the facts developed by the evidence that a dangerous agency was erected by the overhanging wires and that damage to the property flowed from and resulted from the lawful operation of such agency.

The testimony as to the extent of the damage sustained by plaintiff by the witnesses for the respective parties varied greatly. Plaintiff in his petition averred the damage amounted to $6,500. The trial judge correctly instructed the jury that they were to find the difference between the market value of the property immediately before the erection of the power plant and the value of the property immediately after the construction. That was the question for the jury. They were instructed to give weight to the testimony of every witness and to consider the credibility of each person who

testified as to the amount of the damage sustained and his personal interest in the litigation; and they were aided materially in reaching their verdict by the fact that they were allowed to personally view the power plant, the electric wires in question and the premises of plaintiff. With the case thus presented to the jury, we find no reason for a reversal of their verdict.

We have, as noted before, overruled specified assignments of error, and, as the remaining ones are equally devoid of merit, they are here likewise disposed of.

The judgment of the court below is affirmed.