Allentown's Appeal.

Argued December 9, 1935.

Before KELLER, P. J., CUNNING-
HAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES,
JJ.

*Robert L. Stuart,* City Solicitor, with him *Joseph B.
Walker,* Assistant City Solicitor, for appellant.

*Harold W. Helfrich* of *Helfrich & Kohler,* with him
*John L. Cutshall,* for appellees.

OPINION BY CUNNINGHAM, J., February 28, 1936:

The City of Allentown, a city of the third class, has
appealed from an order of the court below, entered
March 11, 1935, by which its exceptions to a report
of viewers were dismissed.

The viewers were appointed under Section 2819 of
the Act of June 23, 1931, P. L. 932, 1041, and upon the
petition of Eva B. Cavanaugh, Emma Leidner and Wil-
liam A. Evrard, appellees herein and the owners of
properties abutting on Chew Street, to "assess the dam-

354

ages for the property taken, injured and/or destroyed in the erection and construction of the public improvement referred to in [their] petition"—the construction, under an ordinance, of "house drain sewers, house connections and branches, in house sewer district No. 16." Norman R. and Grace M. Peters, additional property owners, were permitted to intervene. Appellant sought unsuccessfully to have the appointment of viewers vacated. The injuries to the properties of appellees were thus described in their petition:

"In the construction of the house drain sewers in the said district, the said City of Allentown did cause a main sewer trench to be dug along the southerly side of Chew Street, between St. Cloud and Eighteenth Streets, near the southern curb of the said Chew Street, and in front of the premises of your petitioners herein described.

"On or about the ninth (9th) day of June, 1933, while the said trench was open for the orderly construction of the said house drain sewer system, a severe rain storm caused the street and the trench above described to be submerged and as a result of the said trench construction the said waters found their way from the trench in, to and under the premises of the said Eva B. Cavanaugh, the petitioner herein, causing the same to be undermined and causing the premises of your petitioner, the said Eva B. Cavanaugh to subside and sink, carrying with them a portion and part of the premises of your petitioners, Emma Leidner and William A. Evrard." It was further averred in the petition that the "subsidence, sinking, injury and damage ...... were the direct, immediate, necessary, and unavoidable consequence of the act of the City of Allentown, in the necessary construction" of the sewer, its branches and house connections.

At the hearing before the viewers, appellees submitted evidence indicating that at the time of the rain

storm, referred to in the petition, appellant, through its contractor, Spinoza and Co., had made an excavation, approximately eleven feet deep and from eighteen inches to two feet wide, along the south curb of Chew Street and in front of the residences of appellees. The bottom of the trench was irregular. The storm lasted from the night of June 9th, until the early morning of the 10th, filling the trench with water and inundating the surface of the streets.

Appellees discovered there were large cracks in their walls; that the foundations had subsided; that the wall of one of the houses had become separated from the roof, and that the various doors in the house were jammed. They also noticed that the portion of the trench immediately in front of their premises contained no water, while other parts farther up the street were full of water. The plumbers, engaged to make the connections between the main sewer and appellees' premises, found large cavities under the pavement and under the premises through which water had flowed.

The city offered no evidence before the viewers. In their report the viewers described the injuries to the respective properties and stated their conclusion that no negligence had been shown upon the part of the city, or its contractor, but that the injuries were "the direct, immediate, necessary and unavoidable consequence of the act of the city in digging the sewer trench in question, it not being unusual, as a matter of common knowledge, to have heavy rain storms" in the vicinity at that season of the year. Awards, in the amounts of $1,250 to Eva B. Cavanaugh, $350 to William A. Evrard and Emma Leidner, jointly, and $75 to the Peters, were made.

Appellant filed exceptions to the report under Section 2832 of the Act of 1931, supra, and on the same day, as authorized by Section 2842 of that act, appealed to the court below from the action of the viewers.

356

Under the situation thus created by appellant, it is essential to have in mind at this point the distinction between the issues which may properly be raised and disposed of by exceptions to the report of viewers and those triable before a jury under the appeal. Speaking generally, it may be said, upon the authority of Lower Chichester Township v. Roberts et al., 308 Pa. 195, 162 A. 460, that questions of procedure and other questions of law which should be disposed of preliminarily by a court are properly raised by exceptions, but such issues of fact as the proximate cause of injuries and their extent are for a jury. When questions of fact which should go to a jury are attempted to be raised by exceptions, the court may properly relegate them to the triers of fact for disposition at the trial upon the appeal.

For instance, the third exception, reading, "There is no provision in the Act of June 23, 1931, P. L. 932, Article XXVIII, Section 2819, or in any other Act of Assembly, providing for the appointment of viewers under the state of facts as alleged in the petition," the dismissal of which is assigned for error in the second assignment, raises a question of law for a court. On the other hand, the exception to the finding of the viewers that the injuries suffered in this case were the direct, immediate, necessary and unavoidable consequence of the exercise of the city's right of eminent domain in a non-negligent manner, raises questions of fact triable, upon appeal, before a jury. Theoretically, the damages alleged to have been suffered might have resulted from any one of three causes. They may have been the necessary and unavoidable consequence of the act of the city in making the improvement, as alleged by appellees; or, they may have resulted from an act of God, as argued by appellant; or, from the negligence of the city or its contractor; here, however, neither side suggests the work was negligently performed.

As this appeal is solely from the order dismissing appellant's exceptions, the only assignment requiring discussion is the one questioning the court's authority in law for the appointment of viewers, "under the state of facts as alleged in the petition."

The averment of the appellees is that their properties were "injured" by the municipality through the construction of one of its improvements, i. e., the laying of a sewer, in one of its streets, with branches and house connections. They base their fundamental right to damages upon Section 8 of Article XVI, of the Constitution, which reads: ,

"Municipal and other corporations and individuals invested with the privilege of taking private property for public use shall make just compensation for property taken, *injured* or destroyed by the construction or enlargement of their works, highways or *improvements,* which compensation shall be paid or secured before such taking, injury or destruction. The General Assembly is hereby prohibited from depriving any person of an appeal from any preliminary assessment of damages against any such corporations or individuals made by viewers or otherwise; and the amount of such damages in all cases of appeal shall on the demand of either party be determined by a jury according to the course of the common law." [Italics supplied.]

In support of their contention that appellant was exercising the power of eminent domain, thus conferred upon it, and that they had a right to proceed before viewers, they cite the above mentioned Act of June 23, 1931, P. L. 932, entitled "An act relating to cities of the third class; and amending, revising, and consolidating the law relating thereto." Article XXVIII of this act, (p. 1036) is entitled, "Procedure for the Exercise of Eminent Domain and the Assessment of Damages and Benefits by Viewers." By Section 2801 of this article, it is provided that a third class city in the con-

struction, inter alia, of sewers "may enter upon, appropriate, take, use, occupy, injure, or destroy, private lands, property, ......" etc. By Section 3201 it may construct sewers of all kinds, including house connections to the curb, in its public highways, streets, lanes and alleys, and for that purpose is given "power to exercise the right of eminent domain." In the same section it is provided that the damages for property taken, injured or destroyed shall be ascertained and paid as provided in the act. The appointment of three viewers from the board of viewers of the county to view and ascertain the damages done, etc., is provided for in Section 2819; subsequent sections prescribe the procedure followed in this case and authorize the filing of exceptions to, and the taking of an appeal from, the report of the viewers.

The procedure thus prescribed, although out of the course of the common law, is the remedy generally provided for injuries to property which are the necessary and unavoidable consequences of the act of a municipality in exercising its power of eminent domain. "For such injury as is the direct and necessary consequence of the act itself of eminent domain, the liability of the city under the constitution is absolute, and no care or diligence will relieve it. But for damage resulting from the manner in which the act is done, the city is only liable by reason of negligence": Stork v. Philadelphia, 195 Pa. 101, 105, 45 A. 678. As stated in Fyfe v. Turtle Creek Boro., 22 Pa. Superior Ct. 292, (an appeal from an award by viewers) the right of the appellees will be limited, upon the trial of the appeal in this case, to the recovery of such damages as they may be able to show were the direct, immediate, necessary and unavoidable consequences of the making of the improvement. See also Hirsh v. McGovern, Inc., 100 Pa. Superior Ct. 1.

As we understand the brief of counsel for appellant, they point to the averment in the petition, "that while

the said trench was open ...... a severe rain storm caused the street and trench ...... to be submerged and as a result of the said trench construction the said waters found their way from the trench into and under the premises," and then argue that the rain storm was not a necessary or usual incident in the building of the sewer but an act of God, imposing no liability upon appellant. In other words, their contention is that the injuries were not the necessary and unavoidable consequence of the exercise of the city's right of eminent domain. We think this raises a question of fact for the jury upon the trial of the appeal and we cannot agree with their argument that the court should have passed upon it in disposing of their exceptions.

Our conclusion is that the proximate cause of the injuries is a fundamental issue of fact to be determined by the jury before proceeding to the question of damages, and that this question as well as the amounts of the awards, if the injuries are found to have been of the kind pleaded by appellees, are matters which should be relegated to the trial upon the appeal.

The order dismissing appellant's exceptions is affirmed, without prejudice to its right to proceed, in a manner not inconsistent with this opinion, to the trial of its appeal from the viewers' report.