## Lizza, Appellant, v. Uniontown City.

Argued September 29, 1942. Before SCHAFFER, C. J.; MAXEY, DREW, LINN, STERN, PATTERSON and PARKER, JJ.

The facts are stated in the opinion by CARR, J., of the court below, DUMBAULD, P. J., CARR and MORROW, JJ., as follows:

On appeal from a report of viewers, a property owner obtained a verdict against a municipality for damages to a building on his land alleged to have been the direct, immediate, and necessary or unavoidable result of the construction of a public sewer upon adjoining land. The plaintiff's proof was that flood waters, allowed to stand

for a week or more in trenches dug to receive the sewer pipes, had seeped into and softened the soil underlying his building, causing a wall to slip sufficiently to crack the building. The defendant has moved for a new trial and for judgment non obstante veredicto, contending in support of the latter motion that the evidence, viewed in the light most favorable to the plaintiff, tended only to show negligence and not a direct, immediate, and unavoidable injury consequent upon the exercise of the right of eminent domain.

The plaintiff, Bedy Lizza, individually, and as trustee for others, owns a lot of land on East Main Street in the City of Uniontown at the eastern end of a bridge spanning the valley of Redstone Creek. Upon plaintiff's lot, which fronts 43 feet on the north side of the street and extends back 70 feet, and from which the underlying coal has been mined, is erected a three-story brick building, containing clubrooms, offices, and apartments. On the lower ground of the slope between plaintiff's western boundary and the creek, the heirs of John Seiler, deceased, own a vacant lot in and upon which the City of Uniontown had acquired the necessary rights for laying a sewer, as a part of a new sewage disposal plant.

In the fall of 1938 the city entered into a number of separate contracts for the construction of the new sewer system in sections. One of these contracts, made with Meade Construction Company, provided for the laying in and through the Seiler lot of a section consisting of a terra cotta main interceptor sewer from 21 to 24 inches in diameter, a 24-inch and an 8-inch terra cotta branch interceptor or lateral sewer, a 24-inch terra cotta overflow sewer, a concrete regulator chamber, and two manholes. All these pipes and chambers were required to be placed underground. The contractor dug two trenches, each 12.4 feet deep and about 4 feet wide, one of them enlarged at the location of the regulator chamber to 8½ by 13 feet. The ditch closest to the plaintiff's line was 5½ feet distant from his southwestern and 9½ feet from his northwestern corner. Owing to the gradient of

the Seiler lot, the excavation extended below the foundation of plaintiff's building, but not under it. The work was begun on January 22, 1939. In early spring, while it was in progress and the trenches still open, heavy rains caused the waters of the creek to rise over the whole of the Seiler lot, reaching the west wall of plaintiff's building. The flood stood at this level for two days. When the waters receded, the trenches remained full for a week or ten days, until pumped out to permit the work to proceed. The grading and cleaning up were finally completed in July or August, 1939.

The damage to plaintiff's building was discovered in June, 1939. It was described as consisting of a crack of more than an inch between the pavement of the basement and the western wall, a crack in the rear or northern wall, a crack in the roof near the western wall, cracks in the interior plaster of some of the rooms, cracks in the cemented joints of the sewer tiles inside the building, and separation of girders from the eastern wall.

The case was submitted to the jury under the following instruction: "In the trial of this case the plaintiff is only entitled to recover such damages, if any, as he may be able to show were the direct, immediate, necessary, and unavoidable consequences of the making of the improvement mentioned. For any damage resulting from the manner in which the work was done, the city or the contractor would, in a different kind of suit, be liable by reason of negligence, if negligence there was." The learned trial judge (Judge Morrow) further told the jury: "As we have before indicated, the burden is on the plaintiff to establish by a fair preponderance of the credible testimony, or you must be satisfied from a fair preponderance of all the testimony in the case that there was injury to or permanent impairment of the value of the plaintiff's property, and that this resulted from the direct, immediate, and necessary or unavoidable consequence of the entry of the defendant city upon the Seiler lot and the construction of the sewer system that

was there constructed." These instructions clearly and correctly define the liability of the city in the present proceeding, and explain the plaintiff's burden of proof: *Stork v. Philadelphia*, 195 Pa. 101; *Denniston v. Philadelphia Co.*, 161 Pa. 41; *Chatham Street*, 16 Pa. Superior Ct. 103; *Cooper v. Scranton*, 21 Pa. Superior Ct. 17; *Fyfe v. Turtle Creek*, 22 Pa. Superior Ct. 292; *Hirsh v. McGovern*, 100 Pa. Superior Ct. 1; *Allentown's Appeal*, 121 Pa. Superior Ct. 352.

The only testimony of causal connection between the construction work in the Seiler lot and the damage to the building was that of Louie Agustina, a contractor and one of the beneficial owners of the building. In answer to a hypothetical question based on the plaintiff's proof of water in the trenches and the condition of the building afterward, he said, "I suppose then that ditch was dug about 12 or 13 feet below the footing, the wall. Of course, that water laying there without any attention, from the ground I mean, loosened it out, out from the other ground. Of course it would soften under the wall, soak right in. That is about the only thing that I could say that may cause the wall to slide out. * * * I could say that the wall slid out. * * * I did not exactly measure it, but I think that wall it is better than an inch or an inch and a half, without surveying the building to find just exactly where they were and where it is now, but I can say between the big crack and small cracks it is better than an inch."

Thus the case went to the jury solely on testimony of the negligent manner in which the work was done. No attempt was made by the plaintiff to show that the injury claimed to have been sustained was the necessary result of the location and construction of the sewer. The record is barren of proof that in the exercise of reasonable care and foresight the injury was the unavoidable consequence of the city's act in making the improvement. Indeed, the plaintiff's own witness, Agustina, pointed to the "water laying there without any attention" as the

cause of the damage. That this want of care and diligence was the real basis of plaintiff's action is plainly disclosed by the allegations of his statement of claim; for, although in the eleventh paragraph he pleads as a conclusion that his damage was sustained as a "direct, immediate and unavoidable consequence of said excavating by the City of Uniontown in the exercise of its power of eminent domain," his only supporting factual averment is in the tenth paragraph, as follows: "That after said excavation had been made and before the sewer tile, manholes, traps, gates or concrete walls had been placed in said excavation and the same refilled, the said excavation was for a great length of time permitted by said defendant to stand filled with water from Redstone Creek."

Moreover, it may readily be seen that the injury of which the plaintiff complains was not the direct and immediate consequence of the construction of the sewer. It was not the excavation itself in the Seiler lot that caused the plantiff's wall to slip; it was, upon the plaintiff's proof, the intervention of the flood waters that brought about the damage. The injury was produced by the independent operation of an intermediate instrumentality or agency of harm, but for which the subsidence would not have occurred. As to whether the intervention of the forces of nature would relieve the city or the contractor of liability in a delictual action we express no opinion. For the distinctions between injuries that are direct and immediate and those that are indirect and mediate, see 1 Chitty on Pleading, 141; Street, Foundations of Legal Liability, Vol. 3, pp. 252 et seq.; *Sellers v. Rugh*, 3 Fayette L. J. 133; *Mulchanock v. Whitehall Cement Manufacturing Co.*, 253 Pa. 262; *Christman v. United States*, 74 F. (2d) 112.

It has long been settled that in this form of proceeding damages may not be assessed for harms that result from negligence. Such injuries, for reasons stated in *Stork v. Philadelphia*, 195 Pa. 101, must be redressed in

368

an action of trespass brought against the party responsible for the negligent act or omission. Only upon proof that his loss was the direct, immediate, and necessary or unavoidable consequence of a careful execution of the work could the plaintiff here succeed. Since nothing in the evidence sustains such a finding, judgment must now be entered for the defendant, non obstante veredicto.

*Chad L. John,* for appellant.

*W. F. Lane,* for appellee.

PER CURIAM, November 23, 1942:
The judgment is affirmed on the opinion of Judge CARR.