403 A.2d 986

**TRUCK TERMINAL REALTY COMPANY, A Pennsylvania Corporation, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, Appellee.**

Supreme Court of Pennsylvania.

July 11, 1979.

Leonard M. Mendelson, Hollinshead & Mendelson, Pittsburgh, for appellant.

Gerald Gornish, Atty. Gen., Benjamin B. Wechsler, II, Sp. Asst. Atty. Gen., Robert W. Cunliffe, Deputy Atty. Gen., Pittsburgh, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, and MANDERINO, JJ.

## OPINION

NIX, Justice.

The facts presented in this appeal are undisputed. The appellant owns a parcel of land in Harmar and Indiana Townships, Allegheny County which is used as a truck terminal. The property does not abut on any public thoroughfare, except the Pennsylvania Turnpike, to which there is no access along appellant's frontage. The only access to this parcel is by means of a right-of-way over abutting lands to Legislative Route 679. The Commonwealth filed a declaration of taking by which it condemned a portion of appellant's right-of-way and raised the grade of Route 679. It is conceded that appellant is entitled to be compensated for the damages resulting from the changing of the grade of the road. The dispute arises because appellant does not assert as its principal damage the taking of a part of the right-of-way or the elevation of the road grade. To the contrary, appellant seeks compensation for the impediment to its access during the construction period. As a result of the construction, access to the portion of Route 679 south of appellant's right-of-way, required vehicles entering and leaving appellant's parcel to travel 14 miles farther in each direction to reach the main highway system. It is asserted that this temporary inconvenience imposed upon appellant caused additional out-of-pocket costs in the form of salaries, gas, oil and additional wear and tear on the vehicles involved.

Appellant contends that section 606 of the Eminent Domain Code[1] authorized as compensable damages in connection with the taking its out-of-pocket expenses resulting from the closure of Route 679 during the year-long course of construction activity.[2] The appellant urged the Court of Common Pleas of Allegheny County to construe section 606 of the Code, when read in conjunction with the pertinent part of section 602 of the Code,[3] to allow the Court of Common Pleas to take into account, in appraising the fair market value of the land after a partial taking, evidence concerning the diminution in its fair market value due to the temporary loss of direct access to Route 679. The Court of Common Pleas accepted appellant's interpretation of the statute, modified the Board of Viewers' report in the instant case, and ordered that, at trial, the impact upon appellant's property of the physical closing of Route 679 during the construction period should be an element to be considered, together with all other proper elements, in determining the

1. Act of June 22, 1964, Special Sess., P.L. 84, art. VI, § 606, 26 P.S. § 1–606 (Supp.1978–79). Section 606 provides:
 Effect of Condemnation Use on After Value. In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken. Future damages and general benefits which will affect the entire community beyond the properties directly abutting the property taken shall not be considered in arriving at the after value. Special benefits to the remaining property shall in no event exceed the total damages except in such cases where the condemnor is authorized under existing law, to make special assessment for benefits.

2. Appellant does not contend that he is entitled to consequential damages pursuant to Section 612 of the Eminent Domain Code. 26 P.S. § 1–612 (Supp.1978–79). Its position is that the damages sought are not consequential but direct.

3. Section 602. Measure of Damages. Just compensation shall consist of the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected thereby and the fair market value of his property interest remaining immediately after such condemnation and as affected thereby, and such other damages as are provided in this code.

fair market value of appellant's property immediately after the condemnation. The Commonwealth Court reversed the order of the Court of Common Pleas insofar as it provided that the impact of the highway's closing during construction was to be considered a factor in determining appellant's damages.

The question presented for decision is, therefore, whether the language of the statute warrants compensation for temporary deprivation of right of access to a road necessitated by public construction, changing its grade where a partial taking has been effectuated. Under established Pennsylvania law, the accrual of damages for loss of access resulting from a change in the grade of a public street or road does not constitute a taking of property within the meaning of the Constitution absent an express statutory enactment providing for the payment of such damages. *McGarrity v. Commonwealth*, 311 Pa. 436, 439, 166 A. 895, 896 (1933). This common law rule,[4] to which Pennsylvania adheres, has been held compatible with the dictates of the Federal Constitution. *Delaware River Commission v. Colburn*, 310 U.S. 419, 60 S.Ct. 1039, 84 L.Ed. 1287 (1940). The Eminent Domain Code expressly authorizes the recovery of consequential damages, whether or not any property is taken, when there is a *"permanent interference* with access thereto." Eminent Domain Code, Section 612 (emphasis added).[5] In interpreting and applying the "before and after" measure of damages now codified in section 602 of the Code, Pennsylvania courts required a showing of a permanent injury or deprivation of property rights to establish entitlement to damages in an eminent domain proceeding. *Perla v. Commonwealth*, 392 Pa. 96, 139 A.2d 673 (1958);

4. McQuillen, Municipal Corporations, § 32.32 (3d ed.).

5. Section 612 provides in full:
 All condemnors, including the Commonwealth of Pennsylvania, shall be liable for damages to property abutting the area of an improvement resulting from change or grade of a road or highway, permanent interference with access thereto, or injury to surface support, whether or not any property is taken. 1964, Special Sess., June 22, P.L. 84, Art. VI, § 612.

*Cox v. City of Philadelphia*, 107 Pa.Super. 455, 164 A. 95 (1933). As the Court once observed in a comprehensive discussion of early Pennsylvania authorities on the application of the "before and after" rule:

> The cases almost uniformly hold that damages cannot be recovered for inconvenience in the transition of business . . . caused by the work of making a public improvement; that this temporary inconvenience, and all losses therefrom, must be suffered, for the law permits a recovery only of the permanent depreciation in the value of property taken or injured . . . such depreciation to be judged by the effect of the improvement when completed. *Iron City Auto Co. v. Pittsburgh*, 253 Pa. 478 at 493, 98 A. 679 at 684 (1916).

*Accord 2 Nichols on Eminent Domain*, § 36.11 n.6.

Appellant contends that this settled rule of the incompensability of temporary interference with rights of access has been changed relying upon an excerpt of the Comment to section 606 which reads as follows:

> . . . In determining the fair market value of the remaining property, consideration should be given to the necessary time discount, inconvenience and other effects of the construction period, which might materially affect the price which the condemnee would receive if he were to sell the remaining property to a third party immediately after the day of condemnation, but before completion of the improvement. . . .

This language, which is far from being direct authority for the proposition advanced, must be considered in light of the following which appears thereafter in the same comment:

> . . . It is also the purpose of this section to provide, in accordance with existing law, that general benefits and damages which accrue to the community as a whole are not to be considered in arriving at the after value. Only special, particular and direct benefits and damages to the remaining property may be considered in arriving at the after value. . . .

Thus, even assuming arguendo that the words of the statute as supplemented by a comment whose soundness has been questioned [6] support appellant's interpretation, the question remains whether appellant has suffered special, particular and direct damages resulting from temporary loss of direct access to Route 679 as differentiated from the general damages which "accrue to the community as a whole" as a result of the construction. *Pennsylvania RR Co. v. Marchant*, 119 Pa. 541, 13 A. 690 (1888); *Pennsylvania RR Co. v. Lippincott*, 116 Pa. 472, 9 A. 871 (1887).

Since there was no cause of action at common law for the temporary deprivation of access caused by the work of making a public improvement, such temporary inconvenience not being deemed to constitute a "taking" of a property right, *Iron City Auto Co. v. Pittsburgh, supra; Pennsylvania RR Co. v. Marchant, supra*, appellant's contention boils down to the proposition that the legislature intended to create a compensable property right hitherto unknown to Pennsylvania law by the following language:

In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken. Eminent Domain Code, Section 606.

This section of the Code is not mentioned in the comments to Section 602 as are the others which add items of damage to those recognized by existing case law. When the legislature wished to overrule existing case law by imposing new liabilities on the Commonwealth, it did so expressly, as in section 612, which authorized consequential damages for *permanent*

6. Snitzer on Pennsylvania Eminent Domain, § 606–1.32 (1965):
The Comment notes indicate that there has been an enlargement of fair market value immediately after the taking to include "the necessary time discount, inconvenience, and other effects of the construction period. . . ." This would seem to indicate that the language was intended to change existing law in this regard. The Comment note must be taken with some reservation.

*interference* with access. *See* note 5, *supra*. Should we construe the language of section 606 to expand the Commonwealth's liability to include temporary deprivations of access, it would necessarily follow that its language would also cast a cloud on the continuing vitality of those cases holding that "damages" do not include loss from diversion of traffic, *Lenhart. v. Commonwealth*, 345 Pa. 528, 29 A.2d 22 (1942); that certain items are too "remote and speculative" to be considered "damages"; [7] or that the possibility of negligent operation of the improvement is not admissible in determining damages, *Lamont v. West Penn Power Co.*, 300 Pa. 78, 150 A. 155 (1930). *See* Snitzer, Pennsylvania Eminent Domain, pp. 339–340 (1965).

 The actions of the governmental agency, PennDOT, must fall into two distinct categories: the exercise of eminent domain power, which requires just compensation; and the valid exercise of the police power, not requiring compensation. *Wolf v. Department of Highways*, 422 Pa. 34, 220 A.2d 868 (1966). *See generally* F. Bosselman, The Taking Issue (1973). Temporary interference with road access falls under the noncompensable, exercise of the police power necessary to effectuate public improvement, unless the alleged interference was accomplished in an arbitrary or unreasonable manner. *Wolf, supra; Commonwealth v. Hession*, 430 Pa. 273, 242 A.2d 432 (1968).[8]

 When confronted with questions of statutory construction, this Court has repeatedly held that the words of a statute are to be interpreted in light of the antecedent case law. *Tarlo's Estate*, 315 Pa. 321, 172 A. 139 (1934). Thus, legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication. *Young v. Kaye*, 443 Pa. 335, 279 A.2d 759 (1971). Indeed, when sections 606 and 612 are read together, we can see that when

7. Snitzer on Pennsylvania Eminent Domain, § 606–1.211 (1965).

8. *Westinghouse Air Brake Co. v. Pittsburgh*, 316 Pa. 372, 176 A. 13 (1934) is not inconsistent with the above rule, since under the facts of that case the public construction project in issue was unreasonably prolonged.

the legislature intended to change the established policy of our law by authorizing consequential damages for a permanent deprivation of access, it did so in express language. *See Miles' Estate*, 272 Pa. 329, 116 A. 300 (1922). Section 602 detracts from rather than adds to the force of appellant's urged construction in that the Comments thereto speak of a "codification" of existing case law which, as previously discussed, denied that temporary deprivation of access during the course of construction of a public improvement gave rise to damage claims. *Perla v. Commonwealth, supra; Cox v. City of Philadelphia, supra.*

■ To interpret section 606 as intending other than a codification of existing case law would compel this Court to address itself to the issue of whether the title of the Eminent Domain Code was sufficiently expressed to provide notice that a new burden of damages was imposed upon the Commonwealth by reason of its enactment—a question which, under our prior case law, is of Constitutional dimension. *McGarrity v. Commonwealth, supra; Snitzer, supra* at 362–63. In view of all of the aforementioned considerations, we are satisfied that section 606 was not intended to effectuate the change in prior law as urged by appellant. We therefore hold that the general common law rule denying the compensability of temporary loss of access is still the prevailing law of this jurisdiction.

The order of the Commonwealth Court is affirmed.

LARSEN, J., did not participate in the consideration or disposition of this case.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent because the majority repeals Section 606 of the Eminent Domain Code. That Section provides that in determining the fair market value of the remaining property after a partial taking, consideration is to be given to "damages . . . specially affecting the remaining property due to its proximity to the improvement for which the

property is taken." That section also says that damages affecting the entire community in the said manner are not compensable. In this case the majority has concluded that the damages sought by appellant are damages which affect the entire community and are not damages *specially affecting* the appellant. I fail to understand how this legal conclusion can be reached since there has not been as yet a hearing. Appellant has not had the opportunity to prove whether damages *specially affecting* appellant as distinguished from damages generally affecting the entire community. Section 606 and the comment thereto have been nullified by the majority. Other arguments contained in the majority opinion were well met by the opinion of Judge Larsen (now Justice Larsen) in the trial court which read as follows:

This case came before the Court on plaintiff's appeal from the Report of the Board of Viewers raising a legal question appropriate for preliminary disposition under § 517 of the Eminent Domain Code, Act of June 22, 1964, P.L. 84, 26 P.S. § 1–517. Following oral argument and the submission of briefs, I, on February 24, 1977, entered an order modifying the report of the Board of Viewers and delineating the perimeter of the damages which plaintiff is entitled to prove at the time of the appeal.

Following our order, defendant requested me to certify, pursuant to § 211.501 of the Appellate Jurisdiction Act, 17 P.S. § 211.501, that there is a controlling question of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order will materially advance the ultimate termination of the matter. Plaintiff consented thereto and the Court, recognizing that this case involves a legal issue of first impression, issued the certificate I have since been advised that defendant's Petition for Allowance of Appeal from Interlocutory Order has been granted by the Commonwealth Court.[1] Pursuant to

1. Defendant has also filed a direct appeal from the order. Apparently, it is uncertain whether the order constitutes a final order under § 517 of the Eminent Domain Code. As to this, I express no opinion.

Rule 1925 of the Rules of Appellate Procedure, I am filing this opinion setting forth the reasoning which led me to enter the order appealed from.

The facts relevant to the issue for decision are undisputed. Plaintiff owns a parcel of real estate, which it or its tenant [2] uses as a truck terminal. The property does not abut on any public thoroughfare except the Pennsylvania Turnpike, to which there is no access along the plaintiff's frontage. Plaintiff's only road access is by means of a right-of-way over abutting lands to Legislative Route 679.

On November 18, 1974, the Commonwealth of Pennsylvania, Department of Highways, filed a declaration of taking by which it condemned a portion of plaintiff's right-of-way and raised the grade of L.R. 679. Because plaintiff's property was below the grade of that road prior to the condemnation, the elevation of the grade of the road has accentuated the grade of the right-of-way. The Commonwealth concedes that plaintiff is entitled to assert a claim for a taking of a portion of the right-of-way [3] and the change of grade, but the Commonwealth contends that the property has not been damaged thereby. Apparently, the Viewers were in accord with this contention, for they awarded plaintiff no damages. Whether plaintiff's property was or was not damaged as a result of the taking and the grade change is an issue which will be resolved upon the trial of the appeal.[4]

The problem presented here arises from the fact that in the course of widening L.R. 679 pursuant to the plan of

**2.** Evidently the property is used by the plaintiff's tenant, a subsidiary corporation. It is not clear whether the tenant has a claim for damages and, in any event, that issue is not material to the dispute at hand.

**3.** The Commonwealth does not dispute plaintiff's contention that a right-of-way is property, the condemnation of which gives right to a claim for damages. In an earlier phase of this litigation, involving a different legal issue, a court en banc held: "Truck Terminal is, as the owner of an easement condemned, entitled to just compensation." See also Snitzer on Eminent Domain in Pennsylvania, § 201(2)–8.

**4.** A jury trial has not been demanded by either party. Therefore, under § 516(a)(5) of the Eminent Domain Code, the appeal will be tried non-jury.

condemnation, the Commonwealth found it necessary to close L.R. 679 south of plaintiff's right-of-way in order that the construction work could proceed. Because of that closing, vehicles seeking to leave and enter plaintiff's property from a southerly direction were required to travel 14 additional miles in each direction. Plaintiff complains that it incurred substantial expenses because of the additional distance to which its vehicles were subjected during the construction period.

Plaintiff recognizes that it cannot be compensated for its additional damages as a separate and distinct item of damage, but it argues that the impact upon its property of a physical closing of L.R. 679 to the south of its right-of-way during the construction period is an element to be considered in determining the fair market value of its property immediately after the condemnation and as affected thereby. The Commonwealth, on the other hand, argues that the effect upon the property of the temporary closing of L.R. 679 is not an element of damage in this condemnation case.

Plaintiff's principal statutory reliance is on § 606 of the Eminent Domain Code, which provides: "In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken." The Comment to this section by the Joint State Government Commission, which drafted the legislation, states: "In determining the fair market value of the remaining property, consideration should be given to the necessary time discount, inconvenience and other effects of the construction period, which might materially affect the price which the condemnee would receive if he were to sell the remaining property to a third party immediately after the day of condemnation, but before completion of the improvement." The Statutory Construction Act, § 1939, 1 Pa.C.S.A. § 1939, provides that the comments of a commission which drafted a statute may be consulted in the construction of the

application of the original provisions of the statute, but the text of the statute shall control in the event of a conflict between the text and such comments. In this case, I conclude that the Comment does not conflict with the text but serves rather to elucidate it.

If the Joint State Government Commission's Comment does not apply to the facts in this case, it would be difficult to envision a factual matrix to which it would apply. Certainly the denial of access to the road while construction activity was in progress is part of the necessary time discount, inconvenience and other effects of the construction period. The Comment's further statement that the after value of the property is the price which the condemnee would pay if he were to sell the remaining property to a third party immediately after the day of condemnation but before the completion of the improvement reflects the intent of the drafters that consideration be given to what would normally occur between the day of the condemnation and completion of the improvement; namely, construction activity to effectuate the purposes of the condemnation.

Under § 602 of the Eminent Domain Code, the damages are the difference between the fair market value of the condemnee's property immediately before the condemnation and as unaffected thereby and the fair market value of his remaining interest after the condemnation and as affected thereby. The trier of facts is mandated by this provision to determine the price which a willing buyer would pay a willing seller for the property immediately after the condemnation. It is obvious that if the property were placed on the market for sale immediately after the condemnation, a prospective purchaser would give consideration to the fact that for a certain period of time following the condemnation, the use of the property would be impeded by the Commonwealth's construction activity. If the property would be affected thereby, the price would reflect the impaired use. Since that is a factor which a prospective purchaser would consider in determining the price to pay, it is a factor which similarly should be considered by the trier of facts.

My attention has been called to Snitzer on Eminent Domain in Pennsylvania, § 606–1.32, which makes the following observation regarding the official Comment to § 606:

"The Comment notes indicate that there has been an enlargement of fair market value immediately after the taking to include the 'necessary time discount, inconvenience and other effects of the construction period . .' This would seem to indicate that the language set forth in § 606 was intended to change existing law in this regard. The Comment note must be taken with some reservation. § 606 refers to ('*damages* . . . affecting the remaining property. . . .') It is not expected that this language alters cases prohibiting loss from diversion of traffic, (§ 606–1.217) remote or speculative possibilities, (§ 606–1.211) or negligent operation of the improvement. (§ 606–1.212) These factors have been held not to be relevant to the damage occurring to the remainder. To the extent that proximity to the new improvement was formerly held to be an admissible factor in determining 'damage', all this language actually does is to be declarative of prior law."

Although there may be situations in which § 606 enlarges the damages which were recoverable prior to the Code, I believe that the damages sought here were allowable even before the enactment of the Eminent Domain Code. *Westinghouse Air Brake Company v. Pittsburgh*, 316 Pa. 372, 176 A. 13 (1934), was a case where construction work on a city street required five years for completion. During the construction period the property owner suffered a loss of rentals as a result of the construction activity. In an eminent domain action to recover damages, our Supreme Court held that the property owner was entitled to introduce evidence of the loss of rents as affecting market value:

"Here is a piece of land formerly level with the street. The latter was raised from four to nine feet, interfering seriously with the renting of the property during the work of construction, and appellee did by this lose a large sum of money. Of course, appellant is not liable for all that

loss, and the loss of rents cannot be shown as an independent item of damages, but it is an element to be considered in market value: . . ."

In the *Westinghouse* case, the Court did not hold that the property owner was entitled to recover the amount of the lost rentals as a separate and distinct item of damage. It specifically held that the loss of rents could not be shown as an independent item of damage. The Court did, however, allow consideration of the lost rentals to be considered in determining the market value. Similarly, in the instant case, the property owner should be permitted to prove the effect on its property of the road closing south of its right-of-way. It may show the amount of its increased costs resulting from the need of its vehicles to travel the greater distance. The increased costs, however, are not to be considered as a separate and independent item of damage but merely as an element in determining the market value of the property after the condemnation. Stated somewhat differently, plaintiff is not entitled to be compensated for the impairment of its business; it is entitled to be compensated for the impairment of its real estate.

The Commonwealth relies primarily upon cases such as *Wolf v. Commonwealth*, 422 Pa. 34, 220 A.2d 868 (1966) and *Commonwealth v. Hession*, 430 Pa. 273, 242 A.2d 432 (1968) in which abutting property owners were denied damages for impairment to the value of property caused by highway action resulting in circuity of travel. In *Wolf* it was held that the construction of a medial barrier, which made it impossible for a vehicle to make left turns onto and off of the subject property, was an exercise of the police power and did not give rise to a claim for damages. In *Hession*, the property owner was foreclosed from recovery of damages arising from the conversion of a full cross intersection into a T-intersection with the result that in one of four directions it was necessary to travel a short additional distance. Other cases which have reached similar results under varying factual situations are: *Commonwealth v. Kastner*, 13 Pa.Cmwlth. 525, 320 A.2d 146 (1974); *Brill v.*

*Commonwealth,* 22 Pa.Cmwlth. 202, 348 A.2d 451 (1975); *Commonwealth v. Nod's Inc.,* 14 Pa.Cmwlth. 192, 321 A.2d 373 (1974).

I believe that the foregoing cases are distinguishable from the case at bar. In those cases, the damages claimed were not the direct result of the exercise of the power of eminent domain. Thus, in *Wolf,* it is purely fortuitous that the erection of the remedial barrier was concomitant with the widening of the road. In the case before me, however, the construction activity which brought a denial of the road access was the direct consequence of the exercise of the power of eminent domain, since the power of eminent domain was exercised for the very purpose of bringing about the construction of a widened and improved road.

It has always been the law of this Commonwealth that the condemnor is liable for such damages as are the direct, immediate and necessary consequence of the exercise of the power of eminent domain. *Stork v. Philadelphia,* 195 Pa. 101, 45 A. 678; *Lizza v. Uniontown,* 345 Pa. 363, 28 A.2d 916 (1942); *Hastings' Appeal,* 374 Pa. 120, 97 A.2d 11 (1953); *Allentown's Appeal,* 121 Pa.Super. 352, 183 A. 360 (1936). Although these cases arose in the context of whether the claim for damages is one properly asserted in an eminent domain action as distinguished from a negligence action, the policy of the law is therein clearly expressed: The property owner has a right to compensation in an eminent domain action for the damages which directly and immediately flow from the exercise of the power of eminent domain. I believe that the damages claimed in the case at bar are of that character.

In the cases relied upon by the Commonwealth, the claims for damages appear to have been asserted under sections of the Code other than § 606, on which plaintiff here bases its claim. I find in those cases numerous references to § 612, which permits the recovery of consequential damages in certain instances. I do not find in any of them a claim under § 606. The difference between a claim under § 606 and a claim under § 612 is akin to the difference in a

negligence case between a claim for emotional injury in the absence of impact and a claim for emotional injury accompanied by impact. If the Commonwealth had closed the road in order to reconstruct the surface without any condemnation, there would have been no impact and the condemnee would not be entitled to damages. The condemnation for the widening of the road furnishes the impact and triggers the right to compensation.